101 Cal.App.2d Supp. 927 (1951)
THE PEOPLE, Appellant,
v.
JAMES O. RYAN, Respondent.
California Court of Appeals. 
Jan. 16, 1951.
 James Don Keller, District Attorney, and H. D. Cornell, Deputy District Attorney, for Appellant.
 Henry W. Hache for Respondent.
 BURCH, J.
 Defendant was charged in the Municipal Court of San Diego as follows:
 "That said James S. Ryan on or about the 14th day of July, 1950, in San Diego Township in the said County of San Diego, State of California, and before the making or filing of this Complaint, did then and there wilfully and unlawfully deliver to John Dellenbach a salve, and did represent said salve to have an effect in cancer; ..."
 The defendant demurred to the complaint on the ground that it did not state a public offense. The court sustained the demurrer, dismissed the complaint, and the People appeal.
 By 1939 Statutes, chapter 730, section 1, the Legislature enacted the Pure Drugs Act. This has been set up in the Health and Safety Code, division 21, chapter 2, sections 26200-26385. The administration of the act is committed to the State Board of Health, which is given broad powers to promote the public health and safety. (See Health & Saf. Code, 200-211, inclusive.) Under the act the term "advertisement" means "all representations ... which are likely to induce, directly or indirectly, the purchase of drugs. ..." (Health & Saf. Code, 26209.)
 Drugs are "... (2) articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man. ...; (3) articles (other than food) intended to affect the structure or any function of the body of man. ..." (Health & Saf. Code, 26200.)
 By section 26286 the dissemination of any false advertisement of a drug is prohibited. The violation of any provision of the act is made a misdemeanor and punished by the terms of section 26295.
 Section 26273 provides as follows:
 "Whenever the board determines that an advance in medical science has made any type of self-medication safe as to any of the diseases named in this article, the board shall by regulation authorize the advertisement of drugs having curative [101 Cal.App.2d Supp. 929] or therapeutic effect for such disease, subject to such conditions and restrictions as the board may deem necessary in the interests of public health."
 and section 26271, under which defendant is charged, provides in part as follows:
 "The advertisement of a drug ... shall be false within the meaning of this division if the drug ... is represented to have any effect in ... cancer, ..." (The section includes 49 other diseases.)
 [1] From the portions of the Pure Drugs Act referred to above, we conclude that the advertisement prohibited by section 26271 as false is one that is likely to induce a purchase of a drug which is prohibited by section 26286 with the exception set up in section 26273.
 [2] Defendant asserts that the charge is defective because it does not negative this exception.
 It is sufficient to limit the charge to the gist of the offense. (People v. Nugent, 4 Cal. 341; Ex parte Hornef, 154 Cal. 355, 360 [97 P. 891].) If defendant's product is proper to advertise under other provisions of the act, that is a matter of defense. (People v. Pierce, 14 Cal.2d 639, 643 [96 P.2d 784].) So in a prosecution against a physician for violating section 8 1/2 of the act to regulate the sale and use of poisons (1907 Stats. 124), the complaint is not defective in not negativing the good faith of the physician in prescribing morphine for the use of a habitual user thereof and that the patient was not suffering from an uncurable disease, ailment or injury. (See In re Lord, 199 Cal. 773, 776 [250 P. 714].) This contention of the defendant is untenable. [3] Neither, as defendant claims, is the complaint defective as to him because of his assertion that he is a licensed chiropractor. We find nothing in the Chiropractic Act which would exempt the defendant as such from the requirements of the Pure Drugs Act. [4] We think the charging part of the complaint, which is in ordinary concise language and in the words of the statute, is clear and puts defendant on notice of the offense charged. (Pen. Code 1426.)
 Defendant further claims the section is in violation of the due process and equal protection clauses of the 14th Amendment of the federal Constitution.
 "... due process of law has never been a term of fixed and invariable content." (Federal Comm'n. Comm. v. Station WJR, 337 U.S. 265, 275 [69 S.Ct. 1097, 93 L.Ed. 1353].) [101 Cal.App.2d Supp. 930]
 In Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 550, 551 [69 S.Ct. 1221, 93 L.Ed. 1528], the court said:
 "The Federal Constitution does not invalidate state legislation because it fails to embody the highest wisdom or provide the best conceivable remedies. Nor can legislation be set aside by courts because of the fact, if it be such, that it has been sponsored and promoted by those who advantage from it. (Daniel v. Family Ins. Co., 336 U.S. 220 [69 S.Ct. 550, 93 L.Ed. 632, 10 A.L.R.2d 945].) In dealing with such difficult and controversial subjects, only experience will verify or disclose weaknesses and defects of any policy and teach lessons which may be applied by amendment."
 In Daniel v. Family Security Life Ins. Co., 336 U.S. 220, 224, 225 [69 S.Ct. 550, 93 L.Ed. 632, 10 A.L.R.2d 945], the court says:
 "Despite evidence to the contrary, respondents see no evil to be corrected by this legislation. We are asked to agree with respondents and call the statute arbitrary and unreasonable."
 "Looking through the form of this plea to its essential basis, we cannot fail to recognize it as an argument for invalidity because this Court disagrees with the desirability of the legislation. We rehearse the obvious when we say that our function is thus misconceived. We are not equipped to decide desirability; and a court cannot eliminate measures which do not happen to suit its tastes if it seeks to maintain a democratic system. The forum for the correction of ill-considered legislation is a responsive legislature."
 In a note in 93 L.Ed. 637 it is said that:
 "The decision in Daniel v. Family Secur. L. Ins. Co. (supra), illustrates the unanimous view of the Supreme Court, announced in Lincoln Federal Labor Union v. Northwestern Iron and Metal Co. (1949), 335 U.S. 525, 542, 557 [69 L.Ed. 251, 93 L.Ed. 212, 6 A.L.R.2d 473], that the due process clause is no longer to be so broadly construed that the Congress and state legislatures are put in a straight jacket when they attempt to suppress business and industrial conditions which they regard as offensive to the public welfare, the Court returning closer and closer to the earlier constitutional principle that states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific Federal constitutional prohibition, or of some valid Federal law."
 We may be guided by the above quoted decisions of the [101 Cal.App.2d Supp. 931] Supreme Court of the United States on the issues of due process and equal protection of the law under the 14th Amendment, because that court is the final arbiter of those issues. (Brookes v. City of Oakland, 160 Cal. 423 [117 P. 433].)
 Those issues find like solution in the decisions of our own courts. In Hollywood Turf Club v. Daugherty, 36 Cal.2d 352, 359 [224 P.2d 359], the court says:
 "It is not the function of this court to question the wisdom of the legislative classification and we must be guided by the principles that: ' "The question of classification is generally one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements, and its discretion will not be overthrown unless it is palpably arbitrary. ... It will be presumed that the legislature made inquiry to determine whether or not there were evils to be remedied and that the classification made was based upon the result of the inquiry". ... "When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification" ' (California Physicians' Service v. Garrison, 28 Cal.2d 790, 802 [172 P.2d 4, 167 A.L.R. 306].)" (See to same effect In re McKelvey, 19 Cal.App.2d 94 [64 P.2d 1002]; Matter of Yun Quong, 159 Cal. 508, 515 [114 P. 835, Ann.Cas. 1912C 969].)
 [5] In the light of these and many other authorities that might be cited (see Nebbia v. New York, 291 U.S. 502, 521-539 [54 S.Ct. 505, 78 L.Ed. 940], and notes 8, 9, 12, 13 and 24), it would appear that the judicial responsibility is ended "If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, ...." (Nebbia v. New York, supra, 537; California Physicians' Service v. Garrison, supra, 802, 803.)
 Coming to the merits of the case, a proper legislative purpose in restricting the uncontrolled trade in drugs which may be poisonous has already been decided in In re Gray, 206 Cal. 497, 499 [274 P. 974]. The magnitude of the national evil, which the Pure Drugs Act sought to remedy in this state, is revealed in a note in 53 Harvard Law Review 828, from which it is made to appear that the unregulated trade in drugs without value in diseases resulted in large [101 Cal.App.2d Supp. 932] annual cost in life, health and money to suffering purchasers among the public, hopefully eager to buy. While public opinion, informed by experience and reading, may not decide constitutionality for the courts (see Muller v. Oregon, 208 U.S. 412, 420 [28 S.Ct. 324, 52 L.Ed. 551]), it certainly has an obvious bearing on the rational exercise of legislative power.
 [6] We come to the result that section 26271, supra, is a reasonable and proper statute. On the score of due process, and the opportunity of defendant to establish the merit of his product, section 26273 affords defendant all that he may ask under the law. (Neslen v. Board of Health, 70 Cal.App.2d 202 [160 P.2d 862]; Downing v. California State Board of Pharmacy, 85 Cal.App.2d 30 [192 P.2d 39]; Webster v. Board of Dental Examiners, 17 Cal.2d 534, 541, 542 [110 P.2d 992].)
 The judgment is reversed.
 Turrentine, P. J., and Glen, J., concurred.