[Civ. No. 29434. First Dist., Div. One. Apr. 26, 1972.]

MARTIN BLINDER et al., Plaintiffs. and Appellants, v.
DIVISION OF NARCOTIC ENFORCEMENT,
Defendant and Respondent.

## COUNSEL

Dinkelspiel & Dinkelspiel and John F. Taylor for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Eric Collins and William D. Stein, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**MOLINARI, P. J.**—This is an appeal by plaintiffs from a judgment entered following the granting of defendant's motion for judgment on the pleadings.

Plaintiffs Martin Blinder, Joel Fort, Paul Freeman, Eugene Schoenfeld, and Fred Wilder are individuals duly licensed by the State of California as physicians who, in the course of their medical practice, are called upon to prescribe treatment for the disease of narcotic addiction. (These plaintiffs are hereinafter referred to as "physician plaintiffs.")[1]

Plaintiffs Mary Fitzsimmons, Albert McCoy, Anthony Sandoval and Charles Weaver are individuals who suffer from the disease of narcotic addiction and require treatment by physicians for their addiction. (These plaintiffs are hereinafter referred to as "addict plaintiffs"; "physician plaintiffs" and "addict plaintiffs" are hereinafter referred to collectively as "plaintiffs.")

Defendant State of California, Department of Justice, Division of Narcotic Enforcement, is charged with the enforcement of division 10 of the Health and Safety Code, dealing with narcotics, and specifically with sections 11391 through 11395. (The Division of Narcotic Enforcement is hereinafter referred to as "defendant.")

---

[1]Pursuant to a notice of abandonment, the appeal of David E. Smith, M.D., was dismissed on May 19, 1970.

## The Complaint

On April 10, 1970, plaintiffs filed a complaint against defendant seeking a declaration that sections 11391 through 11395 providing for the treatment of addicts for addiction are unconstitutional and void, and requesting that defendant be enjoined from further enforcement of the statutes against plaintiffs and all other persons. These provisions provide for the place of treatment for narcotic addiction (§ 11391), the maximum daily amounts of narcotics for the first 15 days of treatment (§ 11392) and after 15 days of treatment (§ 11393), when such treatment shall be discontinued (§ 11394), and for a report of such treatment to defendant (§ 11395). All of these statutes, with the exception of section 11392, have been amended since the rendition and entry of the instant judgment. Except insofar as these amendments have rendered plaintiffs' allegations moot as hereinafter pointed out, the amendments are such that they have not removed from the former text the constitutional questions raised by plaintiffs. Accordingly, since the constitutional issues have not been eliminated, we must pass upon them. (*Carter* v. *Stevens*, 208 Cal. 649, 651 [284 P. 217]; *Ames* v. *City of Hermosa Beach*, 16 Cal.App.3d 146, 150 [93 Cal.Rptr. 786].)

Plaintiffs allege that sections 11391 through 11395 are unconstitutional in the following respects: First, they deny addict plaintiffs the equal protection of the laws in that they limit the use of methadone in the treatment of addiction yet allow its unlimited use in the treatment of other diseases. Second, they deprive physician plaintiffs, without due process of law, their right to practice medicine according to their training, experience, skill and judgment in that it is the professional opinion of said plaintiffs, based upon their training, experience, skill and judgment, that the use of methadone is a necessary and effective method for the treatment of narcotics addiction. Third, they deprive addict plaintiffs, without due process of law, of their right to proper medical treatment, in that the use of methadone is a necessary and effective method for the treatment of narcotics addiction. Fourth, they deprive addict plaintiffs, without due process of law, of their right to liberty, in that addict plaintiffs must be committed to a prison, jail, institution or hospital in order to obtain methadone treatment for narcotic addiction. Fifth, they inflict cruel and unusual punishment upon addict plaintiffs in that (a) addict plaintiffs must be committed to a prison, jail, institution or hospital in order to obtain methadone treatment for narcotics addiction, (b) addict plaintiffs are deprived of a necessary and effective method for the treatment of addiction, and (c) addict plaintiffs are subjected to the extreme pain and suffering of symptoms of withdrawal when both narcotics and methadone are withheld from their treatment. Sixth, they compel addict

plaintiffs to be witnesses against themselves in that when requesting treatment for narcotic addiction addict plaintiffs expose themselves to the real and appreciable risk of being identified as habitual users of narcotics which in turn can result in criminal prosecution. Seventh, they compel physician plaintiffs to be witnesses against themselves, in that they require physician plaintiffs to report to defendant the use of methadone in the treatment of narcotic addiction, which treatment is purportedly made a crime by sections 11391 through 11395 and by section 11716, but which treatment is believed by the physician plaintiffs to be a necessary and effective method for the treatment of narcotics addiction.

With particular regard to methadone, plaintiffs allege as follows: "Methadone is a drug necessary and effective in the treatment of the disease of narcotics addiction in that it is inexpensive, may be prescribed to patients without the necessity of confinement or hospitalization, blocks the action of narcotics, eliminates narcotic cravings which drive addicts to resume their addiction, and produces neither euphoria nor other distortions of behavior. Methadone treatment by qualified physicians allows the patient-addict to enjoy a productive social role, free of criminal behavior."

### Judgment on the Pleadings

Defendant's motion for judgment on the pleadings "had the purpose and effect of a general demurrer [citation] and on review is to be tested by the same rules. [Citations.] Since the motion was used to perform the function of a general demurrer, it 'reaches only to the contents of the pleading and such matters as may be considered under the doctrine of judicial notice' [citation] and 'admits all material and issuable facts pleaded.' [Citation.]" (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.,* 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3] [cert. den. 390 U.S. 949 (19 L.Ed.2d 1139, 88 S.Ct. 1037)].)

In keeping with these principles, it is assumed for the purpose of our review that plaintiffs' allegations respecting the efficacy of methadone in the treatment of addiction are true. Acknowledging the verity of these allegations, we nevertheless have concluded that the court below properly granted defendant's motion for judgment on the pleadings. A review of the authorities demonstrates that plaintiffs have failed to allege facts sufficient to state a cause of action. Plaintiffs' allegations do not establish that defendant's enforcement of the subject statutes will deprive them of their rights to due process and equal protection of the laws, subject them to cruel and unusual punishment, or violate their privilege against self-incrimination.

### Due Process

█ Physician plaintiffs alleged in their complaint that the subject statutes deprive them "without due process of law, of their right to practice medicine according to their training, skill and judgment, . . . in that it is the professional opinion of said plaintiffs, based upon said training, experience, skill and judgment, that the use of methadone is a necessary and effective method for the treatment of narcotics addiction." Addict plaintiffs alleged that the subject statutes deprive them "without due process of law, of their right to proper medical treatment, . . . in that the use of methadone is a necessary and effective method for the treatment of narcotics addiction."

In *Gray* v. *Whitmore,* 17 Cal.App.3d 1, 20-21 [94 Cal.Rptr. 904], we recently articulated the meaning of "due process" as follows: "The term 'due process of law' asserts a fundamental principle of justice which is not subject to any precise definition but deals essentially with the denial of fundamental fairness, shocking to the universal sense of justice. [Citations.] The definition in each case depends upon the circumstances varying with the subject matter and the necessities of the situation. [Citation.] Accordingly, the same circumstances may in one setting constitute a deprivation of due process while in another setting, in the light of other considerations, the same circumstances may not amount to such denial. [Citations.] . . . [¶] Substantive due process . . . deals with protection from arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest procedural safeguards. In substantive law such deprivation is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation reasonably applied, i.e., the law must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be attained. [Citations.]"

In the contest of the present case substantive due process is considered in its relationship to the "police power" of the state to enact the challenged statutes. " 'Police power is the power inherent in a government to enact laws, within constitutional limits, to protect the order, safety, health, morals, and general welfare of society.' " (*In re Rameriz,* 193 Cal. 633, 649-650 [226 P. 914, 34 A.L.R. 51]; see *Panhandle Co.* v. *Highway Comm'n.,* 294 U.S. 613, 622 [79 L.Ed. 1090, 1096-1097, 55 S.Ct. 563].) " 'To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that the interests of the public . . . require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.' " (*Goldblatt* v. *Hempstead,* 369 U.S. 590, 594-595 [8 L.Ed.2d

130, 134, 82 S.Ct. .987], quoting *Lawton* v. *Steele,* 152 U.S. 133, 137 [38 L.Ed. 385, 388, 14 S.Ct. 499]; see *Panhandle Co.* v. *Highway Comm'n., supra,* at pp. 621-622 [79 L.Ed. at pp. 1096-1097].)

With respect to the first requisite, that in order for the state to exercise its police power the interest of the public requires the exercise of such power, we note the following statement in *Whipple* v. *Martinson,* 256 U.S. 41, 45 [65 L.Ed. 819, 822, 41 S.Ct. 425]: "There can be no question of the authority of the State in the exercise of its police power to regulate the administration, sale, prescription, and use of dangerous and habit-forming drugs, . . . The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called into question." (See also *Robinson* v. *California,* 370 U.S. 660, 664 [8 L.Ed.2d 758, 761, 82 S.Ct. 1417]; *In re Gray,* 206 Cal. 497, 499 [274 P. 974].)

In determining whether the second requisite of reasonable necessity for the accomplishment of the purpose is met, we must do so in the light of the following principles: "(1) A statute is presumed to be constitutional unless its unconstitutionality clearly and unmistakably appears, all intendments favor its validity, and mere doubt is not a sufficient reason for a judicial declaration of its invalidity [citations]; (2) the burden of overcoming the presumption of constitutionality is upon the assailant [citations]; and (3) the existence of facts supporting the legislative judgment being presumed [citation], the reviewing court is limited to such facts as appear upon the face of the enactment, together with such others as are a matter of judicial cognizance [citations]." (*People* v. *Aguiar,* 257 Cal.App.2d 597, 601-602 [65 Cal.Rptr. 171] [cert. den. 393 U.S. 970 (21 L.Ed.2d 383, 89 S.Ct. 411)].)

Adverting to these principles as applicable to the present case, we first observe, contrary to the assertion made by physician plaintiffs, that the statutes in question do not bar them from using methadone in the treatment of addiction. Rather, they limit the places at which methadone may be administered (§ 11391), restrict the amount which may be given (§§ 11392, 11393), and determine the length of treatment (§§ 11392, 11393, 11394). Section 11390 specifically provides that "Any narcotic employed in treating an addict for addiction shall be administered by a physician, or by a registered nurse acting under his instruction." (See also § 11390.5.)

We perceive that the thrust of plaintiff physicians' claim concerning the impingement upon their right to practice their profession is with respect

to the statutory restriction as to the place where they may treat a person for narcotic addiction and the restriction as to the length of treatment. The latter assignment of alleged constitutional infirmity need not be discussed. In 1970, subsequent to the institution of the instant action, the Legislature removed the limitations upon the length of time during which methadone may be administered for the treatment of addiction. (§ 11394, as amended, Stats. 1970, ch. 1422, § 2.5.) We take judicial notice of this amendment. (Evid. Code, §§ 450, 451, 459.) The question as to the limitation on length of treatment is, therefore, moot. "An appellate court will not review questions which are moot and which are only of academic importance." (*Keefer* v. *Keefer*, 31 Cal.App.2d 335, 337 [87 P.2d 856].)

Adverting to the place of treatment, we observe that the statute provides for the specified types of institutions and hospitals wherein a person shall be treated as an addict.[2] It also provides that a physician may treat a person for such addiction at any place during emergency treatment or where it is involved with other medical complications. With particular regard to methadone, it may be used in the continuing treatment of narcotic addiction in those programs approved by the Research Advisory Panel (§ 11655.7) on an outpatient or inpatient basis, or both. These facilities afford ample facilities in which physicians may give treatment for narcotic addiction.

It is well established, moreover, that although the right to practice medicine, like the right to practice any other profession, is a valuable property right (*Hewitt* v. *Board of Medical Examiners*, 148 Cal. 590, 592 [84 P. 39]), this right may not be exercised free of reasonable restrictions. "The state clearly has the power to regulate professions in the interest of public health, safety and welfare." (*Magan Medical Clinic* v. *Cal. State Bd. of Medical Examiners*, 249 Cal.App.2d 124, 131 [57 Cal. Rptr. 256]; *People* v. *Nunn*, 46 Cal.2d 460, 469 [296 P.2d 813].)

As we have previously noted, the right of the state to regulate the administration of drugs is beyond question. (*Robinson* v. *California, supra,* 370 U.S. 660, 664 [8 L.Ed.2d 758, 761]; *In re Gray, supra,* 206 Cal. 497, 499; *People* v. *Ryan,* 101 Cal.App.2d Supp. 927, 931 [226 P.2d 376].) Accordingly, by virtue of a general statutory plan physicians are granted certain privileges respecting the administration of drugs, but this privilege is not absolute.

---

[2]Section 11391, in pertinent part, provides: "No person shall treat an addict for addiction except in one of the following: (a) An institution approved by the Board of Medical Examiners, and where the patient is at all times kept under restraint and control. (b) A city or county jail. (c) A state prison. (d) A county-operated mental health center. (e) A state hospital. (f) A county hospital."

(*People* v. *Marschalk,* 206 Cal.App.2d 346, 350 [23 Cal.Rptr. 743].)
It is thus recognized that the Legislature can *"deprive a doctor of the
right to prescribe for any patient, including one who may be an addict,
. . ."* (*People* v. *Nunn, supra,* 46 Cal.2d 460, 469; *People* v. *Lawrence,*
198 Cal.App.2d 54, 61 [18 Cal.Rptr. 196].)

Plaintiff physicians' argument for invalidity clearly appears to be
premised upon their disagreement with the desirability of the statutes they
have challenged. This is not the proper forum for correcting what physicians
deem to be ill-considered legislation; that function belongs to a responsive
Legislature.[3] (*People* v. *Ryan, supra,* 101 Cal.App.2d Supp. 927, 931.)
This court has previously recognized that it is not our function to deter-
mine "whether there are better methods of treating narcotic addicts than
those which are provided by law." (*Elder* v. *Bd. of Medical Examiners,*
241 Cal.App.2d 246, 277 [50 Cal.Rptr. 304] [cert. den. 385 U.S. 1001 (17
L.Ed.2d 541, 87 S.Ct. 701)].)

Directing our attention to addict plaintiffs' claim that they are being
deprived of their right to proper medical treatment, we assume, for purpose
of our review, that there is a right to medical treatment to the extent that
the state may not make unavailable a medically safe and effective drug
which is necessary to the maintenance of an individual's health and well-
being. (*Cf. People* v. *Belous,* 71 Cal.2d 954, 963-964 [80 Cal.Rptr. 354,
458 P.2d 194] [cert. den. 397 U.S. 915 (25 L.Ed.2d 96, 90 S.Ct. 920)].)
We also assume, in view of the procedural context of the instant case,
that plaintiffs' allegations respecting the efficacy of methadone in the
treatment of narcotic addiction are true. (*Colberg Inc.* v. *State of Cali-
fornia* ex rel *Dept. Pub. Wks., supra,* 67 Cal.2d 408, 411-412.)

The subject statutes do not prohibit the use of methadone in the treat-
ment of narcotic addiction. The statutory scheme allows such treatment
but restricts the places at which it can be administered, limits the quantity
of the drug that may be administered, and provides for the termination
of the treatment after a fixed period. (§§ 11391-11394.) There can be no
question that the treatment is available to all who seek it since the institu-
tions and programs specified in section 11391 are readily accessible to
persons who are in detention as well as those who are not. As we have
pointed out above, such treatment is obtainable in county-operated medical

---

[3]We observe that the Legislature has not been unresponsive to the need for the
reevaluation of the treatment of narcotic addiction. Thus, since the filing of the
instant complaint, the Legislature has increased the amount of methadone that
may be used (§ 11393), eliminated the restriction on the length of treatment
(§ 11394), provided for the establishment of methadone programs on either an in-
patient or outpatient basis, or both (§ 11391), and provided for the submission of
reports on the progress thereby established (§ 11655.8 (Stats. 1970, ch. 1422, § 4.5)).

health centers and county hospitals and may be provided on both an in-patient and outpatient basis. No claim is made that such institutions are not affording the programs envisioned by section 11391. No issue is tendered as to reasonableness of the maximum daily amounts of methadone provided for in sections 11392 and 11393. We may assume that these statutes were enacted on the basis of contemporary medical knowledge as a reasonable regulation for the protection and health of the addict. (See *People* v. *Belous, supra,* 71 Cal.2d at pp. 964-965.)

With respect to the claim of addict plaintiffs that they are deprived of their liberty without due process of law, in that they must be committed to a prison, jail, institution or hospital in order to obtain methadone treatment for narcotic addiction, we first observe that there is no such requirement in the statutes. The subject statutes do not provide for commitment but for *treatment*. They contemplate the treatment of an addict by a physician where such treatment is consented to by the addict or where such treatment is pursuant to commitment for purpose of narcotic addiction. (See Welf. & Inst. Code, §§ 3050-3053, 3100-3110, 3301.) These commitment procedures provide for a hearing (Welf. & Inst. Code, §§ 3050, 3051, 3104, 3105, 3106, 3108) and therefore satisfy the requirements of procedural due process. (See *People* v. *Moore,* 69 Cal.2d 674, 681, 684-685 [72 Cal.Rptr. 800, 446 P.2d 800].) We apprehend, moreover, that the reference in section 11391 to institutions of detention as places of treatment for narcotic addiction has reference to a detention in such institution upon a proper commitment following a hearing satisfying the basic requirements of due process. Moreover, as already pointed out, several of the places of treatment mentioned in section 11391 are not places of restraint or detention, e.g., county hospitals and county-operated mental health centers. Moreover, the statute permits the use of methadone in the treatment of narcotic addiction on an outpatient basis.

Finally, assuming that it could be argued that the subject statutes require commitment for narcotic addiction in order to obtain methadone treatment, there is no constitutional infirmity in such a requirement. It is well established that, in the interest of the general welfare of its inhabitants, a state may establish a program of compulsory treatment for those addicted to narcotics and that such a program may include periods of involuntary confinement. (*Robinson* v. *California, supra,* 370 U.S. 660, 664-665 [8 L.Ed.2d 758, 761-762]; *In re De La O,* 59 Cal.2d 128, 138-141 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; *In re Cruz,* 62 Cal.2d 307, 314-317 [42 Cal.Rptr. 220, 398 P.2d 412]; *People* v. *Moore, supra,* 69 Cal.2d 674, 684-685; and see *Elder* v. *Bd. of Medical Examiners, supra,* 241 Cal.App.2d 246, 277.)

We conclude, therefore, that the challenged statutes are enactments which have for their purpose the interest of public health and welfare and are reasonably necessary for the accomplishment of that purpose. They are not unduly oppressive, arbitrary or capricious, and they do not deprive the narcotic addict of effective methadone treatment. Accordingly, none of the plaintiffs are deprived of substantive or procedural due process.

### Equal Protection

■ Plaintiff addicts allege in their complaint that the subject statutes deny them the equal protection of the laws "in that they limit the use of methadone in the treatment of said plaintiffs for their addiction yet allow the unlimited use of methadone in the treatment of persons for diseases other than narcotics addiction."

The constitutional guaranty of equal protection of the laws has been judicially defined to mean "that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. [Citations.]" (*Gray* v. *Whitmore*, *supra*, 17 Cal.App.3d 1, 21.) This concept does not require absolute equality or that a statute necessarily apply equally to all persons. (*Gray* v. *Whitmore*, *supra*, and cases there cited.) Accordingly, a state may provide for differences as long as the result does not amount to an invidious discrimination. (*Douglas* v. *California*, 372 U.S. 353, 356 [9 L.Ed.2d 811, 814, 83 S.Ct. 814]; *In re Antazo*, 3 Cal.3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999]; *Gray* v. *Whitmore*, *supra*.)

" 'The question of classification is generally one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements, and its discretion will not be overthrown unless it is palpably arbitrary. [Citation.] It will be presumed that the legislature made inquiry to determine whether or not there were evils to be remedied and that the classification made was based upon the result of the inquiry.' . . . 'When the legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification.' [Citations.]" (*California Physicians' Service* v. *Garrison*, 28 Cal.2d 790, 802-803 [172 P.2d 4, 167 A.L.R. 306]; *Hollywood Turf Club* v. *Daugherty*, 36 Cal.2d 352, 359 [224 P.2d 359]; *State of California* v. *Ind. Acc. Com.*, 48 Cal.2d 365, 371-372 [310 P.2d 7].)

"There is no constitutional requirement of uniform treatment of all

persons but only that there be a reasonable basis for each classification. [Citation.]" (*Azevedo* v. *Jordan,* 237 Cal.App.2d 521, 527 [47 Cal.Rptr. 125].) If a class has particular characteristics, it may, because of those characteristics require special protection. (*Hollywood Turf Club* v. *Daugherty, supra,* 36 Cal.2d 352, 360.)

Courts can take judicial notice of the physical, mental and moral destruction that results from narcotic addiction. It was therefore reasonable for the Legislature to conclude that treatment of this disease by the use of narcotics should be subject to certain specific requirements for the treatment of such addiction. Addict plaintiffs have failed to allege facts demonstrating that the Legislature acted in a palpably arbitrary manner, and that the permissible use, if any, of methadone in the treatment of other ailments different from that permitted for the treatment of narcotic addiction is an unreasonable classification. We therefore perceive no violation of the guaranty of the equal protection of the laws.

### Cruel and Unusual Punishment

Addict plaintiffs allege that the subject statutes are invalid in that they inflict cruel and inhuman punishment in three respects: (1) that a person must be committed to a prison, jail, institution or hospital in order to obtain methadone treatment for narcotic addiction; (2) that they deprive addicts of a necessary and effective method of treatment of narcotic addiction; and (3) that addicts are subjected to the extreme pain and suffering occasioned by the symptoms attendant withdrawal when both narcotics and methadone are withheld from their treatment.

We have already discussed the substance of the first contention in our consideration of the claim of denial of due process. Moreover, the California Supreme Court has specifically held that the involuntary commitment of narcotic addicts for the purpose of medical treatment does not constitute cruel and inhuman punishment. (*In re De La O, supra,* 59 Cal.2d 128, 149-150; *In re Cruz, supra,* 62 Cal.2d 307, 317; *People* v. *Moore, supra,* 69 Cal.2d 674, 684-685.)

The second contention has also been disposed of in our prior discussion of due process. That contention has been rendered moot by the removal by the Legislature of the restriction upon the length of time during which methadone may be administered in the treatment of narcotic addiction.

Adverting to the third contention, and assuming, as we must, that the

allegation is true, we apprehend that the thrust of the allegation is that the statutes in question per se induce a physical condition when narcotics are withdrawn and methadone is not furnished to counteract the withdrawal symptoms, thus causing the patient to suffer. This assertion calls for speculation. Such an occurrence is a factual occurrence which, if it resulted in a given case, occurs because of the manner in which the treatment is administered by the physician. It is not per se dictated by the subject statutes. We observe that at the time the complaint was filed in the instant case the statutes did not wholly prohibit the administration of either narcotics or methadone in the treatment of addiction. Even if we were to assume that the termination of the treatment after the period fixed by the statute would result in the suffering of the pains of withdrawal, such restriction no longer exists. Under existing provisions methadone may be administered as long as the physician deems such administration to be medically indicated. Any assertion of cruel and inhuman punishment as constitutionally proscribed appears to be tenuous.

### Self-Incrimination

■ Physician plaintiffs allege that the subject statutes compel them "to be witnesses against themselves, . . . in that they require said plaintiffs to report to defendant the use of methadone in their treatment of narcotics addiction, which treatment is purportedly made a crime by said statutes and by Section 11716 of the Health & Safety Code, but which treatment is believed by the physician plaintiffs to be a necessary and effective method for the treatment of narcotics addiction." With respect to this allegation, we note that the statutory scheme only makes it a crime to administer methadone in the treatment of addiction in a manner other than that provided by the Legislature. (§§ 11163, 11716.) There is no blanket prohibition on the use of methadone in the treatment of addiction.

Plaintiff addicts allege that the statutes compel them "to be witnesses against themselves, . . . in that when requesting treatment for narcotics addiction said plaintiffs expose themselves to the real and appreciable risk of being identified as habitual users of narcotics which in turn can result in their criminal prosecution."

In order to invoke the privilege against self-incrimination it is necessary to show that the compelled disclosures will themselves confront the claimant with "substantial hazards of self-incrimination." (*California* v. *Byers,* 402 U.S. 424, 429 [29 L.Ed.2d 9, 18, 91 S.Ct. 1535].) Accordingly, if the claim is asserted in an essentially noncriminal and regulatory area of inquiry directed at the public at large, the mere possibility of incrimination is insufficient to defeat the strong policies of the disclosure statute. (*Albert-*

*son* v. *SACB,* 382 U.S. 70, 79 [15 L.Ed.2d 165, 171-172, 86 S.Ct. 194]; *California* v. *Byers, supra,* at pp. 430-431 [29 L.Ed.2d at pp. 18-19]; see *Shapiro* v. *United States,* 335 U.S. 1, 17-18, 32-33 [92 L.Ed. 1787, 1798-1799, 1806-1807, 68 S.Ct. 1375]; *Wilson* v. *United States,* 221 U.S. 361, 381 [55 L.Ed. 771, 779, 31 S.Ct. 538]; *United States* v. *Sullivan,* 274 U.S. 259, 263-264 [71 L.Ed. 1037, 1039-1040, 47 S.Ct. 607, 51 A.L.R. 1020].) Thus, in *Sullivan,* it was held that in a prosecution for failure to file an income tax return the privilege against compulsory self-incrimination could not be invoked because it would have tended to incriminate him by revealing an unlawful source of income. Similarly, in *Byers,* a "hit and run" statute requiring a driver of a motor vehicle involved in an accident, resulting in damage to property, to stop at the scene and give his name and address was held not to be violative of the privilege against compulsory self-incrimination because the statute was regulatory rather than criminal in nature and was directed to the public at large rather than to a highly selective group suspected of criminal activities. (At pp. 430-431 [29 L.Ed.2d at pp. 18-19].)

The cases in which reporting procedures were found to be invalid because they violated the privilege against self-incrimination are those in which the disclosures condemned were "extracted from a 'highly selective group inherently suspect of criminal activities' and the privilege was applied only in 'an area permeated with criminal statutes'—not in 'an essentially non-criminal and regulatory area of inquiry.'" (*California* v. *Byers, supra,* 402 U.S. 424, 430 [29 L.Ed.2d 9, 18]; see *Albertson* v. *SACB, supra,* 382 U.S. 70, 78-79 [15 L.Ed.2d 165, 171-172]; *Marchetti* v. *United States,* 390 U.S. 39, 48, 57 [19 L.Ed.2d 889, 897-898, 903, 88 S.Ct. 697]; *Grosso* v. *United States,* 390 U.S. 62, 67-69 [19 L.Ed.2d 906, 911-913, 88 S.Ct. 709]; *Haynes* v. *United States,* 390 U.S. 85, 96-99 [19 L.Ed.2d 923, 932-934, 88 S.Ct. 722].)

Applying these principles to the case at hand, we conclude that section 11395 is a statute operating essentially in a "noncriminal and regulatory area of inquiry" and is not directed to "a highly selective group inherently suspect of criminal activities." The subject statute requires that the physician treating an addict make a report stating the name and address of the patient, the name and quantities of narcotics, if any, prescribed, and the progress of the patient under treatment. Such a record is not different from that prepared and preserved by a competent physician in connection with the treatment of any person. The reporting requirements of section 11395 are not structured in such a way that only those who have violated provisions of the narcotic treatment statutes must report, but they apply to *all* physicians who treat patients for narcotic addiction and who have complied with the law. These records are in and of themselves

neutral on their face. Moreover, the information requested of physician plaintiffs is not substantially different from that which they are required to obtain and preserve for inspection regarding the administering of narcotics to patients who are not addicts. (Cf. §§ 11225, 11226.)

As already indicated in our prior discussion, the entire legislative scheme with which we are dealing is regulatory in nature and designed in the public interest to control the distribution of narcotics as well as to foster the treatment of persons who are narcotic addicts. The subject reports assist in accomplishing these objectives and as such assume a "public aspect" so as to make them analogous to public documents. (See *Grosso* v. *United States, supra,* 390 U.S. 62, 67-69.)

We next consider the allegation of addict plaintiffs. The sections of the statutory scheme attacked do not impose any direct reporting requirement upon addict plaintiffs. However, it is evident that the addict must inform the physician of his addiction and that the physician's subsequent report will identify the patient as an addict. However, narcotic addiction is not a crime and no one may be punished simply because he is a narcotic addict. (*Robinson* v. *California, supra,* 370 U.S. 660, 667 [8 L.Ed.2d 758, 763].) It thus follows that addict plaintiffs cannot incriminate themselves simply by reporting the nature of their illness. Any risk of prosecution is necessarily a " 'remote possibilit[y] out of the ordinary course of law.' [Citation.]" (*Haynes* v. *United States,* 390 U. S. 85, 97 [19 L.Ed.2d 923, 932].) As we have previously observed, the information which is conveyed respecting the treatment of an addict is not substantially different from the information which must be preserved respecting the treatment of persons suffering from other diseases. (Cf. §§ 11225, 11226.) This indirect reporting requirement is thus in no way analogous to the reporting provisions which were invalidated in the decisions noted above and it cannot practically be distinguished from the direct reporting requirement imposed upon the treating physician.

*Byers* recognizes that questions arising from tensions between a governmental demand for disclosure and the protection of the right against self-incrimination must be resolved in terms of balancing the public need on the one hand and the individual claim to constitutional protection on the other. (402 U.S. at p. 427 [29 L.Ed.2d at p. 17].) But where statutes such as the one challenged here are regulatory in nature and based on a strong public policy in favor of disclosure, the mere possibility of incrimination is insufficient to defeat such policy. (*California* v. *Byers, supra,* at p. 428 [29 L.Ed.2d at p. 17].) Accordingly, we hold that there is no conflict

between section 11395 and the privilege against compulsory self-incrimination.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied May 24, 1972, and appellants' petition for a hearing by the Supreme Court was denied June 22, 1972.