[Civ. No. 47759. First Dist., Div. Two. Sept. 17, 1980.]

EMMETT C. WILSON, JR., et al., Plaintiffs and Appellants, v.
CALIFORNIA HEALTH FACILITIES COMMISSION,
Defendant and Respondent.

318

COUNSEL

Merrill M. Hirsch, Cottrell, Hofvendahl & Roessler and Eleanor M. Kraft for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Joseph O. Egan and Ralph Johnson, Deputy Attorneys General, and John M. Fredenburg for Defendant and Respondent.

## OPINION

**TAYLOR, P. J.**—Emmett C. and Verna Wilson, as individuals and general partners in Monte Villa, a limited partnership, appeal from a judgment denying declaratory and injunctive relief and ordering them to comply with the financial reporting requirements of the California Health Facilities Disclosure Act (Health & Saf. Code, § 440 et seq.),[1] contending that section 442, subdivision (a) invades a zone of privacy protected by the Fourteenth Amendment of the United States Constitution, and article I, section 1 of the state Constitution. For the reasons set forth below, we have concluded that the statute is constitutional and that, therefore, the judgment must be affirmed.

The facts were stipulated and found as follows by the court:

Emmett C. and Verna I. Wilson are husband and wife who jointly own and act as general partners of Monte Villa, a limited partnership;

---

[1]Hereafter all references are to the Health and Safety Code unless otherwise specified.

the only limited partner is Emmett's mother Aline (collectively Wilson). Monte Villa is an acute psychiatric hospital licensed by the State Department of Health.

The California Health Facilities Commission (Commission) is an independent body established by the California Health Facilities Disclosure Act (Act) to enforce its provisions (§ 441.3). The Act requires all licensed health facilities which operate in the state to file with the Commission for public disclosure uniform reports of health facility cost experience, together with detailed financial statements. The Act applies to the health facility operated by Wilson (§ 441.2).

In January 1976, the Commission informed Wilson of the Act's accounting and reporting requirements. Wilson opposed these requirements, contending that the Act required disclosure of private financial status, imposed an unduly costly and burdensome accounting system, and required disclosure of information that would harm its competitive position. After a hearing, the Commission's appeals committee concluded that it lacked jurisdiction. By stipulation, the matter was referred to the Commission and the prior transcript admitted into evidence. The Commission conducted an additional hearing and determined that the Act was constitutional and applied to Wilson. This action ensued.

The purposes of the Act are detailed by section 441, quoted below.[2]

---

[2]"The Legislature hereby finds and declares: (a) It is the *policy of this state*, as declared and established in this part, *to require all health facilities* which operate in this state *to file for public disclosure with the* California Health Facilities *Commission* which is established by this part such *uniform reports of health facility cost experience* in the provision of health care services as are provided for under this part in accord with the systems of accounting approved under this part, *for all of the following purposes*:

"(1)   Encouraging *economy and efficiency* in their provision of such services in this state.

"(2)   *Enabling public agencies* of this state which purchase health care services under, or which have administrative responsibility for, publicly financed health care plans or programs *to make informed decisions in such purchasing or administration.*

"(3)   *Encouraging public and private third party payors for health facility services to take the information provided under this part into account in establishing reimbursement rates to assure health facilities of a fair and reasonable payment for such services rendered.*

"(b)   It is the *policy* of this state *that in order to achieve uniform and equitable statewide implementation of the policies of this part and to allow for comparisons of the performance of particular health facilities subject to its provisions, it is necessary to require that* every person, political subdivision of the state, or any governmental agency within the state, that establishes, conducts, operates, manages, maintains, or controls in this state any health facility *complies with the provisions of this part.*

The record indicates that the Act was the Legislature's response to rapidly increasing health care costs, which threatened to deny needed services to many Californians unless the health care system was made more accountable. Hospitals, as a group, account for the largest single cost component of medical care. The hospital industry is not subject to normal market forces which can be an effective control on efficiency or cost. The Act was a political compromise between those seeking greater governmental control over the industry and the sectors of the industry resisting all government regulation. The disclosure aspects, based on a uniform accounting and reporting system, were an attempt to provide the public and the government with the necessary data to make sound judgments for the planning and purchase of hospital services.

■ Wilson here focuses primarily on the aspect of the right of privacy involving the individual interest in avoiding disclosure of personal matters[3] (*Whalen v. Roe* (1977) 429 U.S. 589, 599 [51 L.Ed.2d 64, 73, 97 S.Ct. 869]).

The federal right to privacy is a personal one that protects individuals and not the financial records of business entities (*Bellis v. United States* (1974) 417 U.S. 85 [40 L.Ed.2d 678, 94 S.Ct. 2179]), which are not within the protected zone (*Fisher v. United States* (1976) 425 U.S. 391 [48 L.Ed.2d 39, 96 S.Ct. 1569]; *United States v. Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]). By analogy, Wilson attempts to bring the instant case within the small family partnership exception

---

"(c)   It is the *policy* of this state to have health facilities *make available to the public the highest capabilities of health science in an effective, efficient manner.* It is the policy of this state to provide *reasonable and appropriate safeguards to insure that the total cost of health facility services is reasonably related to the total services offered by health facilities* that the aggregate rates of health facilities are reasonably related to the aggregate costs of health facilities and that the *rates charged by health facilities are uniform for all purchasers of health facility services, because the state has an obligation to assure access and availability of high quality, efficiently provided, economical health facility services for all persons* in this state *and because the expenditure of public funds of this state for providing health facility* services to many persons *has a large financial impact on the public funds* of this state. Therefore, *it is the declared policy of this state that health facilities are affected with the public interest, involved in the distribution of essential services, and obliged to furnish services to the general public at fair, equal, and nondiscriminatory rates.*" (Italics added.)

[3]The other aspects, the right to be free from government surveillance, primarily protected by the Fourth Amendment, and the interest in independence in making certain kinds of personal decisions (marriage, procreation, contraception, family relationships, child rearing and education) and the First Amendment penumbra, are not in issue (*Whalen v. Roe, supra,* at p. 600, fn. 26 [51 L.Ed.2d at pp. 73-74]).

to the *Bellis* rule (at p. 101 [40 L.Ed.2d at p. 691]), recognized in *United States* v. *Slutsky* (S.D.N.Y. 1972) 352 F.Supp. 1105.[4]

Even assuming, as Wilson argues, that the statute restricts a fundamental right, when the state asserts important interests in safeguarding health, review is under the rational basis standard (*Roe* v. *Wade* (1973) 410 U.S. 113, 154 [35 L.Ed.2d 147, 177-178, 93 S.Ct. 705]). The court in *Roe* held at pages 163-165 [35 L.Ed.2d at pages 182-184], that a state may, without encroaching upon any right of privacy, further its important interests in the areas of health and safety. The lesson of *Roe* for the instant case is that the disclosure of certain financial information by health care facilities is a reasonable means to assure the access and availability of high quality health facility services for all persons.

Where, as here, the statute primarily concerns health and safety, no fundamental right to privacy is at stake. In *Kelley* v. *Johnson* (1976) 425 U.S. 238, 247 [47 L.Ed.2d 708, 715, 96 S.Ct. 1440], the court commented: "The promotion of safety of persons and property is unquestionably at the core of the State's police power." The court concluded that where such safety interest is involved, the test to be implemented is whether there is no *rational* connection between the regulation and "the promotion of safety of persons and property."

In *Whalen* v. *Roe, supra*, 429 U.S., at pages 597-598 [51 L.Ed.2d at pages 71-73], the court reiterated the test of *Kelley* v. *Johnson, supra*, 425 U.S. 238, and ruled that New York's patient identification requirement for the prescription of certain dangerous drugs was a reasonable exercise of the state's broad police powers. The court also noted that there were sufficient legislative hearings to support the legislation, and that the state had a right to experiment with legislative solutions to the problem.

Similarly, where the economic regulation is involved, the rational basis test is proper. Recently, the United States Supreme Court approved such a rationale in *New Orleans* v. *Dukes* (1976) 427 U.S. 297, stating,

---

[4]In *Slutsky*, two brothers formed a partnership and ran a country club with a significant number of employees on the payroll. The partners were so intimately involved with the business that the court concluded that the partnership records were the purely private and personal records of the partners-brothers and, therefore, subject to the Fifth Amendment privilege against self-incrimination.

The instant matter, of course, was tried solely on grounds of privacy and there are no facts to warrant the application of the *Slutsky* exception or the Fifth Amendment.

at page 303 [49 L.Ed.2d 511, at page 517, 96 S.Ct. 2513], that "States are accorded wide latitude in the regulation of their local economics under their police powers...." In *Duke Power Co. v. Carolina Env. Study Group* (1978) 438 U.S. 59 [57 L.Ed.2d 595, 98 S.Ct. 2620], the court relied on the traditional presumption of constitutionality generally accorded economic regulations, and concluded that the legislation must be upheld, absent proof of arbitrariness or irrationality on the part of the legislative body.

The purposes of the Act, as quoted above at footnote 2, indicate that it encompasses both health and economic regulation. While the Act's primary purpose is to make available to the public the highest capabilities of health science, the Legislature also expressed a concern for economy and efficiency in the provision of health care services.

Wilson does not complain of the submission of the required financial reports to the Commission, but of their potential disclosure to the public pursuant to section 442, subdivision (a), set forth, so far as pertinent, below.[5] Relying on *Humana of Virginia, Inc. v. Blue Cross of Va.* (E.D.Va. 1978) 455 F.Supp. 1174, 1178, Wilson argues that the potential public disclosure of the reports filed with the Commission jeopardizes Wilson's competitive position, particularly in its negotiating leverage with employees. We find more persuasive, however, the reasoning of *Westchester Gen. Hosp. v. Dept. of Health, etc.* (M.D. Fla. 1979) 464 F.Supp. 236, 245-246. Since the financial reports required by the Act apply to all of the state's health care facilities, the same information will be equally accessible to everyone. In other words, every health care facility will have equal access to the cost report information about its potential competitors. Where every member of the relevant, competitive market is affected similarly, it is somewhat specious to argue that equally available information is anticompetitive.

As here the state's legitimate interests in health and safety are involved, it may properly exercise its police powers and no doctrine prohibits public dissemination. The Legislature sets forth as one of the major purposes of the Act to furnish the public individually and collec-

---

[5]"(a) *The commission shall maintain a file of all the reports filed* under Sections 441.18 and 442.1 at its Sacramento office. Subject to such rules as the commission may prescribe, *such reports shall be produced and made available for inspection upon the demand of any person.*" (Italics added.)

tively with sufficient information to render sound judgments.[6] The Legislature found that the hospital industry was not subject to the normal controls of supply and demand, that there was a continuing spiral of hospitalization costs, and that public disclosure of hospital cost reports was necessary to encourage an open market situation.

We think, therefore, that section 442, subdivision (a) is reasonable and responds to the problems perceived by the Legislature. The purpose of public disclosure is to enable public agencies and private citizens to make informed decisions about planning and purchasing health care; to encourage public and private third party payors to use this information to ascertain fair and reasonable premium rates; and to insure that the total cost for health care is reasonably related to the total services offered (§ 441).

Accordingly, we conclude that section 442, subdivision (a) of the Act does not invade a zone of privacy protected by the United States Constitution.

■ The inalienable right of privacy guaranteed by article I, section 1 of the state Constitution[7] protects a larger zone in the area of financial and personal affairs than the federal right (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656-657 [125 Cal.Rptr. 553, 542 P.2d 977]; *Burrows v. Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590]). However, our Supreme Court recently held in *People v. Privitera* (1979) 23 Cal.3d 697, 707 [153 Cal.Rptr. 431, 591 P.2d 919], that there is a presumption of constitutional validity and no trespass into the forbidden zone of privacy where health and health care legislation are involved.[8] Thus, the state standard initially also requires a legitimate and reasonable state interest and means that

---

[6]As the Commission points out, public disclosure of financial information is a frequently used method to bring accountability to an industry (e.g., Employee Retirement Income Security Program, 29 U.S.C. §§ 1001-1381; Securities Act of 1933, 15 U.S.C. § 77a et seq.; Uniform Supervision of Trustees for Charitable Purpose Act, Gov. Code, § 12580 et seq.).

[7]As reworded by the constitutional amendment of 1974, article I, section 1 now reads as follows: "All people are by nature free and independent, and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and *pursuing* and obtaining safety, happiness, and *privacy*." (Italics added.)

[8]Health care legislation is a proper exercise of police power (*Aden v. Younger* (1976) 57 Cal.App.3d 662, 672, 681 [129 Cal.Rptr. 535]; *Blinder, supra*, 25 Cal.App.3d 174).

bear a real and rational relation to the object sought to be obtained (*Blinder* v. *Division of Narcotic Enforcement* (1972) 25 Cal.App.3d 174, 179 [101 Cal.Rptr. 635]; *People* v. *Privitera, supra*, at p. 709). We have already indicated above that this standard has been met here.

Even assuming without conceding that under the state standard we must apply the strict scrutiny test here, we think the state's legitimate interest in the quality, cost and availability of hospital facilities outweighs Wilson's interest in having the financial information about the cost of operating its facility remain unavailable to the public. Wilson's state right to privacy is not an absolute right, but one that may be outweighed by supervening public concerns. Thus here, public disclosure is properly compelled (cf. *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 679 [156 Cal.Rptr. 55]).

Wilson also argues that its facility has not received or sought any public funds.[9] However, this is not significant in light of the express legislative finding that health facilities are affected with the public interest and involved in the distribution of essential services. This is in accord with existing case law indicating that both nonprofit and investor-owned hospitals are quasi-public trusts (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Ascherman* v. *Saint Francis Memorial Hosp.* (1975) 45 Cal.App.3d 507 [119 Cal.Rptr. 507]) and the extensive and close state supervision to which hospitals are and have been traditionally subjected.

Wilson's argument also overlooks the fact that the scope of the disclosure required is properly limited and consistent with the purposes of the legislation. Thus, the owner of a health care facility is not required to report any activities unrelated to the operation of that facility (see § 441.2, 441.18,[10] set forth, so far as pertinent, below).

---

[9]As the Commission notes, there are many indirect sources of public funds, such as workmen's compensation and public employee health insurance that flow to hospitals. Further, recent legislation requires that almost all health insurance policies afford coverage for the specialized treatment provided by Wilson's facility (§ 1367.2; Ins. Code, §§ 10123.6, 11512.14).

[10]Section 441.18: "Every organization which operates, conducts, or maintains a health facility and the officers thereof, shall make and file with the commission, within four months after the close of the organization's calendar or fiscal year for all annual accounting periods to which the systems of accounting and uniform reporting approved under Section 441.17 are made applicable thereby, all of the following reports on forms

As to the burden of the uniform reporting requirements of the Act, Wilson overlooks the regulations providing for requests for modification to approved accounting systems (Cal. Admin. Code, tit. 4, § 7050).

We conclude, therefore, that section 442, subdivision (a) also does not invade a zone of privacy protected by the state Constitution.

Affirmed.

Miller, J., and Smith, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 19, 1980.

---

specified by the commission which shall be in accord with such systems of accounting and uniform reporting all of the following:

"(a) A balance sheet detailing the assets, liabilities, and net worth of the health facility at the end of its fiscal year.

"(b) A statement of income, expenses, and operating surplus or deficit for the annual period ending on the balance sheet date.

"(c) A statement detailing the source and application of funds expended by the health facility for the period encompassed by the income statement required by subdivision (b).

"(d) A statement reporting the information required in subdivisions (a), (b), and (c) of this section for each separately licensed health facility operated, conducted, or maintained by the reporting organization.

"(e) A report of health facility expenditures which allocates the costs of non-revenue-producing departments of a health facility to the other non-revenue- and revenue-producing centers which they serve...."