802 So.2d 397 (2001)
Jesus F. QUILES, Appellant,
v.
The CITY OF BOYNTON BEACH, Florida, a municipal corporation, and Gerald Broening, individually, Appellees.
No. 4D01-71.
District Court of Appeal of Florida, Fourth District.
November 21, 2001.
Rehearing Denied January 7, 2002.
*398 Douglas A. Balog, Melbourne, for appellant.
James A. Cherof, City Attorney, Michael D. Cirullo, Jr., Assistant City Attorney, and Josias, Goren, Cherof, Doody & Ezrol, P.A., Fort Lauderdale, for appellee The City of Boynton Beach, Florida, a municipal corporation.
GROSS, J.
Jesus F. Quiles appeals from a final order granting the City of Boynton Beach's motion to dismiss with prejudice his claim seeking declaratory and injunctive relief. Quiles alleges that by voting to add fluoride to its potable water supply, the city violated his right to refuse medical treatment under the United States and Florida Constitutions, thereby exceeding its authority to enact such a measure. We affirm and write to address the constitutional issue.
On January 26, 2000, the Boynton Beach City Commission held a public meeting to consider the merits of fluoridating its water supply, and to hear input from residents and other qualified individuals on the issue of fluoridation. After taking testimony, reviewing documents, and posing questions to the supporters and opponents of fluoridation in attendance, the commission voted unanimously to fluoridate its water supply.
On August 11, 2000, Quiles filed suit against the city and its mayor alleging that the fluoridation measure violated his constitutional rights under the state and federal constitutions, and seeking declaratory and injunctive relief to stop the city from fluoridating its water supply. On September 5, 2000, the city filed a motion to dismiss the complaint for failure to state a cause of action.
The trial court ruled that the city had the authority to add fluoride to its water supply, and that doing so did not implicate Quiles's right to refuse medical treatment under Article I, Section 23 of the Florida Constitution.
The Florida Constitution, as well as Florida law enacted pursuant to it, gives municipalities broad "governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services" and to "exercise any power for municipal purposes." Art. VIII, § 2(b), Fla. Const.; § 166.021, Fla. Stat. (2000). In defining the scope of a "municipal purpose," Florida courts have long held that "[i]t is the duty of public authorities in municipalities to protect the safety, the health and the general welfare of the citizens" and that "[t]his duty involves sanitary and health regulations." Garvin v. Baker, 59 So.2d 360, 364 (Fla.1952). Such proper municipal health regulations include the regulation of a municipality's waterworks. See State v. Tampa Waterworks Co., 56 Fla. 858, 47 So. 358 (1908). Ordinances regulating municipal water treatment "are not expressly or by fair implication limited to the establishment of a municipal plant." Id. at 361. In fact, adding fluoride to the water supply of a municipality has been specifically upheld as a valid exercise of a municipality's police *399 power. See City Comm'n of Fort Pierce v. State ex rel. Altenhoff, 143 So.2d 879, 888-89 (Fla. 2d DCA 1962).
Quiles does not argue that the city is without authority to run its own water treatment facility or regulate its own water supply. Nor does he object to the city adding chlorine to its water supply. Quiles objects only to the fluoridation of the water because he believes that fluoride has no real health benefits and that it is not necessary to make the water potable or fight serious disease; it is added to water merely as a prophylactic measure to fight tooth decay. He argues, therefore, that to add fluoride to the water supply is beyond the city's police power, and courts should apply the highest standard of judicial review, strict scrutiny, to such a decision.
Quiles contends that drinking fluoridated water can cause a host of adverse health effects. Because of these adverse health effects, Quiles chooses not to ingest fluoride. Being forced to consume fluoride through the city's water supply, Quiles asserts, amounts to "compulsory medication" that violates his right to privacy set forth in Article I, Section 23 of the Florida Constitution.
In arguing this position, Quiles relies on Singletary v. Costello, 665 So.2d 1099 (Fla. 4th DCA 1996). In Singletary, this court stated that
a competent person has the constitutional right to choose or refuse medical treatment and that right extends to all relevant decisions concerning one's health. Courts overwhelmingly have held that a person may refuse or remove artificial life support, whether supplying oxygen by a mechanical respirator or supplying food and water through a feeding tube.
Id. at 1104 (quoting In re Guardianship of Browning, 568 So.2d 4, 11-12 (Fla.1990)). The right identified by this court in Singletary is not qualified "on the basis of the denomination of a medical procedure as major or minor, ordinary or extraordinary, life-prolonging, life-sustaining, or otherwise." Id. (quoting Browning, 568 So.2d at 11 n. 6). Quiles argues that this court should extend the holding of Singletary to require a compelling state interest in order for the city to fluoridate its water. In doing so, Quiles equates the fluoridation of city water to the complusory medical treatment at issue in Browning and Singletary.
This case is distinguishable from Singletary and Browning. The introduction of fluoride into the city's water is not a "medical procedure," as contemplated by either this court in Singletary or the supreme court. Browning, 568 So.2d at 11 n. 6.
Importantly, the city proposes to fluoridate the water before it enters each household in the city; it is not seeking to introduce the mineral directly into Quiles's bloodstream. Therefore, the city's fluoridation of its water stops with Quiles's water faucet. The city is not compelling him to drink it. He is free to filter it, boil it, distill it, mix it with purifying spirits, or purchase bottled drinking water. His freedom to choose not to ingest fluoride remains intact.
The cases upon which Quiles relies involve the state's power to physically force "artificial life-support" directly into the body of an individual claiming the right to refuse such treatment. Browning, 568 So.2d at 11. They involve highly invasive procedures where the state sought to override a person's freedom to choose. This is a far cry from the action taken by the city in this case.
Quiles argues that the city's power should be limited to protecting the health of its citizens, and not merely improving it by preventing certain conditions. We *400 agree with the second district's analysis in Altenhoff:
[T]here is, in logic, a valid factual distinction between preserving health on one hand and improving it on the other.... We do feel, however, that it is a distinction which the courts should not be made to suffer in arriving at a determination as to whether a particular public health measure is or is not a reasonable or legitimate exercise of power to legislate in the public interest on the state or local level.
143 So.2d at 888 (emphasis in original). As long as a municipality is acting within its legal and constitutional limitations, it is not the duty of the courts to judge the wisdom of a municipality when adopting health measures, whether those measures act to protect or improve the health of its citizens.
We agree with the second district in Altenhoff, and hold that the City of Boynton Beach has home rule authority to fluoridate its water, and that the decision to do so is neither an arbitrary nor unreasonable imposition on the constitutional rights of its residents. 143 So.2d at 888; see, e.g., Young v. Bd. of Health of Somerville, 61 N.J. 76, 293 A.2d 164, 165 (1972) ("courts throughout the nation have been virtually unanimous in ... upholding fluoridation of drinking water as a valid public health measure whenever a challenge has been presented"); Schuringa v. City of Chicago, 30 Ill.2d 504, 198 N.E.2d 326, 333-34 (1964) (holding that a municipality has the power to fluoridate its water which is "reasonably related to the common good" and not "unreasonable or arbitrary"); Kraus v. City of Cleveland, 163 Ohio St. 559, 127 N.E.2d 609, 613 (1955) (rejecting the arguments that fluoridation is an infringement on individual rights and is mass medication).
The trial court's dismissal of the plaintiff's complaint is affirmed.
GUNTHER and WARNER, JJ., concur.