[No. D045382. Fourth Dist., Div. One. Aug. 17, 2005.]

PAUL COSHOW et al., Plaintiffs and Appellants, v.
CITY OF ESCONDIDO et al., Defendants and Respondents.

688

689

**COUNSEL**

Blumenthal & Markham, Norman B. Blumenthal, David R. Markham and Kyle R. Nordrehaug for Plaintiffs and Appellants.

Jeffrey R. Epp, City Attorney, Jennifer K. McCain, Assistant City Attorney; Hogan Guiney Dick and Michael M. Hogan for Defendant and Respondent City of Escondido.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, John H. Sanders, Gregory M. Cribbs and Karen L. Fried, Deputy Attorneys General, for Defendant and Respondent Department of Health Services.

OPINION

**HALLER, J.**—Paul Coshow and several other residents of Escondido, California[1] (collectively Coshow) sued the City of Escondido (City) and the California Department of Health Services (Department) for declaratory and injunctive relief, challenging City's plan to fluoridate its drinking water with hydrofluorosilicic acid (HFSA) and claiming the use of HFSA violates their constitutional rights and exposes the general public to unnecessary health risks. The court granted judgment on the pleadings in favor of City and Department after finding Coshow failed to state a cause of action for declaratory or injunctive relief.

Coshow appeals, contending: (1) the court erred by granting judgment on the pleadings based on motions in limine filed by City and Department; (2) he had standing to challenge City's unconstitutional conduct and its impermissible expenditure of public funds under Code of Civil Procedure sections 1060 and 526a; (3) his fourth amended complaint alleged violations of fundamental constitutional rights to privacy and bodily integrity under the federal and state Constitutions; (4) the court erred by refusing to consider allegations that HFSA is a drug which the federal Food and Drug Administration (FDA) has not approved for the prevention of dental caries; (5) the court erred by refusing to consider allegations that use of HFSA to fluoridate City's drinking water violates Penal Code section 374.8; and (6) the court's factual findings are unsupported by the evidence and were improperly applied to grant judgment on the pleadings.

Accepting, as we must, the truth of the allegations of Coshow's complaint, we conclude Coshow cannot state a cause of action for violations of fundamental constitutional rights or a violation of Penal Code section 374.8. Accordingly, we affirm the judgment.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

City operates a community water system serving about 130,000 people through nearly 25,000 service connections. In June 2001, City directed its staff to implement a fluoridation plan in compliance with the California Safe Drinking Water Act (SDWA) (Health & Saf. Code,[3] § 116270 et seq.), which

---

[1] In addition to Coshow, the plaintiffs are Robin Winton, Sabrina Gese, Owen Morrison, Dottie Glen, Al McGowen and Jim Petersen, suing on behalf of themselves, the general public and all persons similarly situated. Shirley Macy was a plaintiff but is not a party in this appeal.

[2] We deny Coshow's request for judicial notice of (1) 1 Blackstone, Commentaries 125–130; and (2) a statement by the FDA regarding the use of fluoride in drinking water and drug products.

[3] Statutory references are to the Health and Safety Code unless otherwise specified.

requires fluoridation of each public water system having at least 10,000 service connections. (§ 116410, subd. (a).)

In September 2001, Coshow filed a complaint for declaratory relief, alleging City's plan to fluoridate its water was unconstitutional and illegal because mass fluoridation of the water supply presents a reasonable certainty of harm to City's residents, including permanent dental scarring, genetic damage, cancer and other ailments. In a first amended complaint filed in December 2001, Coshow alleged a single cause of action for declaratory relief against City, challenging the constitutionality of fluoridating City's water supply and seeking a judicial determination as to whether City's decision to implement a fluoridation plan was constitutionally permissible. City demurred to the first amended complaint and the court sustained the demurrer with leave to amend.

Coshow filed a second amended complaint in April 2002, adding the State of California as a defendant and seeking declaratory and injunctive relief as to the constitutionality of City's decision to fluoridate its drinking water. The court. overruled City's demurrer in part and sustained it in part with leave to amend.

In September 2002, Coshow filed a third amended complaint against City and the State of California, this time challenging the constitutionality of City's use of HFSA to fluoridate its water supply and alleging City violated his fundamental right "to preserve [his] health from such government-imposed practices as may prejudice or annoy it." City answered the complaint and the State of California demurred. Based on Coshow's representation he was not making a facial challenge to the legislation mandating the fluoridation of City's drinking water, the court overruled the demurrer in part and sustained it in part, giving Coshow leave to amend to name the proper state agency involved, to clarify the nature of his claim against that entity and to specify the particular legislation involved.

In October 2002, City submitted an application to Department to amend City's domestic water supply permit to begin fluoridation. While this lawsuit was pending, Department approved City's application. Department determined City's plan, including use of HFSA, complied with requirements of all applicable state drinking water laws and regulations.

In January 2003, Coshow filed a fourth amended complaint, the relevant pleading here, again challenging the constitutionality of using contaminated, industrial-grade HFSA to fluoridate City's public water supply. As to City, Coshow sought a declaration that: (1) the implementation of City's fluoridation plan to use contaminated HFSA, without his informed consent, violates

his fundamental rights under the state and federal Constitutions to be free from such government-imposed practices as may prejudice or annoy his health; and (2) the fluoride implementation contracts signed by City are illegal and void because they violate his constitutional rights. Coshow further alleged City's fluoridation plan violates Penal Code section 374.8 and is an illegal expenditure of public funds, warranting injunctive relief. As to Department, Coshow alleged its conduct in requiring, approving and permitting City to fluoridate its water with contaminated HFSA is illegal under Penal Code section 374.8 and unconstitutional as applied to the facts of this case.

City and Department filed motions for summary adjudication of claims and summary judgment, primarily arguing City's fluoridation plan complied fully with the SDWA and its implementing regulations and thus, no triable issue of fact existed as to Coshow's claims. In his opposition, Coshow abandoned his earlier claim the City's plan would result in an excessive concentration of fluoride in the drinking water and instead claimed HFSA is hazardous waste because it contains trace levels of lead and arsenic, thereby making City's fluoridation plan illegal and harmful to the public health, and unconstitutional as an infringement of bodily integrity. The court denied City's and Department's motions.

The parties then filed trial briefs and pretrial motions, including numerous motions in limine. The court ruled on the parties' motions in limine, heard argument on Coshow's constitutional allegations and continued the trial. After receiving additional briefing on the constitutional issues, the court: (1) excluded evidence concerning Coshow's allegations that HFSA has not been approved by the FDA; (2) found the fourth amended complaint did not allege a claim under article I, section 1 of the California Constitution for violation of the right to privacy; and (3) denied Coshow's request for leave to amend. The court also found the only potential theories of constitutional liability were the alleged substantive due process violations as to "conduct which impacts a fundamental right (here, the right to be free from the introduction of an allegedly toxic substance, HFSA, into the municipal drinking water, i.e., toxic for reasons other than . . . merely containing fluoride) . . . ."

Following that ruling, Coshow sought an order setting a hearing to address the state of trial evidence. Coshow attached exhibits, including copies of Department's final approval of City's application for a permit amendment to begin fluoridation, the permit amendment and Department's engineering report on City's application.

The parties filed additional motions in limine as to the remaining constitutional issues, including City's motion to dismiss Coshow's constitutional

claims and Department's motion to dismiss any claims under Penal Code section 374.8. The court issued an order construing City's and Department's motions as a motion for judgment on the pleadings and concluded as a matter of law that Coshow failed to state causes of action for declaratory or injunctive relief.

DISCUSSION

I

*The Court Properly Treated Motions in Limine as a Motion
for Judgment on the Pleadings*

Coshow contends the court erred by granting judgment on the pleadings based on motions in limine filed by City and Department. He asserts Code of Civil Procedure section 1008 was the exclusive vehicle for reconsideration of issues previously decided on demurrer and summary judgment and there is no authority for the "irregular" procedure used here to obtain a dismissal of his claims through a motion in limine.

■ A court's inherent powers to control litigation and conserve judicial resources authorize it to conduct hearings and formulate rules of procedure as justice may require. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267–268 [279 Cal.Rptr. 576, 807 P.2d 418]; *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1377 [5 Cal.Rptr.2d 882].) Exercising these powers, the court may enter judgment in favor of a defendant when motions in limine show that, " 'even if the plaintiff's allegations were proved, they would not establish a cause of action.' " (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 285 [54 Cal.Rptr.2d 655]; see also *Mechanical Contractors Assn. v. Greater Bay Area Assn.* (1998) 66 Cal.App.4th 672, 676–677 [78 Cal.Rptr.2d 225].)

Here, the motions in limine, although directed at particular items of Coshow's evidence, had the cumulative effect of an objection to all evidence on the ground Coshow failed to state any cause of action, entitling City and Department to judgment as a matter of law. (*Clemens v. American Warranty Corp.* (1987) 193 Cal.App.3d 444, 451–452 [238 Cal.Rptr. 339].) Although the court previously overruled City's and Department's demurrers and denied their motions for summary adjudication of claims and summary judgment, those rulings did not deprive the court of its inherent power to grant judgment on the pleadings if it believed Coshow's allegations, even if proved, would not establish a cause of action. Indeed, it is not uncommon that as a case proceeds to trial and additional discovery is conducted, evidence is revealed which will either substantiate or disprove a cause of action. Once the court here sustained various objections to Coshow's evidence, no viable cause of

action remained. Thus, the court properly exercised its inherent powers over the proceedings by construing the motions in limine as a motion for judgment on the pleadings. (*Lucas v. County of Los Angeles, supra*, 47 Cal.App.4th at p. 285.)

■ Moreover, Code of Civil Procedure section 1008 governs a party's ability to renew a motion, not a court's inherent power to reconsider its rulings. (See *People v. Castello* (1998) 65 Cal.App.4th 1242, 1248 [77 Cal.Rptr.2d 314] [court's inherent powers are wide and include authority to rehear or reconsider rulings]; *Gailing v. Rose, Klein & Marias* (1996) 43 Cal.App.4th 1570, 1579 [51 Cal.Rptr.2d 381].) Indeed, a court has complete power to change its decision until judgment is entered. (*APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 181 [90 Cal.Rptr.2d 171]; *Ramon v. Aerospace Corp.* (1996) 50 Cal.App.4th 1233, 1237–1238 [58 Cal.Rptr.2d 217].) Contrary to Coshow's assertion, Code of Civil Procedure section 1008 did not prevent the court here from revisiting issues of law previously raised or from considering motions in limine as a basis to grant judgment on the pleadings. (See *Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 204–205 [56 Cal.Rptr.2d 732] [Code of Civil Procedure section 1008 is inapplicable if issue of law is the same but motion is different].)

## II

### *Standard of Review*

■ Judgment on the pleadings is similar to a demurrer and is properly granted when the "complaint does not state facts sufficient to constitute a cause of action against [the] defendant." (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii); see *Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1254 [2 Cal.Rptr.3d 739]; *Rolfe v. California Transportation Com.* (2002) 104 Cal.App.4th 239, 242 [127 Cal.Rptr.2d 871].) The grounds for the motion must appear on the face of the challenged pleading or from matters that may be judicially noticed. (Code Civ. Proc., § 438, subd. (d).) The trial court accepts as true all material facts properly pleaded but does not consider conclusions of law or fact, opinions, speculation, or allegations contrary to law or facts which are judicially noticed. (*Shea Homes Limited Partnership v. County of Alameda, supra*, 110 Cal.App.4th at p. 1254.)

■ We independently review the trial court's ruling on a motion for judgment on the pleadings to determine whether the complaint states a cause of action. In so doing, we accept as true the plaintiff's factual allegations and construe them liberally. (*Rolfe v. California Transportation Com., supra*, 104

Cal.App.4th at pp. 242–243.) If a judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it regardless of the considerations used by the trial court to reach its conclusion. (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216 [70 Cal.Rptr.2d 745].)

## III

### *Coshow Cannot State a Cause of Action for Declaratory or Injunctive Relief Based on a Violation of a Fundamental Constitutional Right*

Coshow contends he stated a cause of action for violation of a fundamental constitutional right by alleging City's conduct of dumping dangerous levels of arsenic into the public water supply severely and negatively impacts his bodily integrity and that of every other citizen served by City's water supply. He asserts he is being forced, without his consent, to drink the municipal water containing a drug—HFSA—that has never been tested or approved by the FDA to treat dental caries and which is dangerous to his health and the health of other residents.[4]

### A

### *The Safe Drinking Water Act and Its Implementing Regulations*

■ Congress enacted the Safe Drinking Water Act (federal SDWA) (42 U.S.C. § 300f et seq.) in 1974 to establish uniform quality standards for the public water systems in the United States and to reduce contamination in drinking water. The federal SDWA prohibits states from enacting drinking water laws less stringent than those established by the Environmental Protection Agency (EPA). (42 U.S.C. § 300g.)

■ In 1976, the Legislature enacted California's SDWA, declaring water delivered by public water systems in this state should be at all times pure, wholesome and potable, and adopting procedures to be followed in an effort to accomplish this objective. (Stats. 1976, ch. 1087, § 2.5, pp. 4918–4929,

---

[4] Coshow also contends the court erred by finding he had no standing to seek declaratory and injunctive relief under Code of Civil Procedure sections 526a and 1060. However, the record shows the trial court did not base its ruling on lack of standing to challenge the constitutionality of government conduct, but rather on the ground Coshow's fourth amended complaint failed to state causes of action for declaratory or injunctive relief based on a violation of a fundamental constitutional right. In any event, because we address the merits of Coshow's constitutional challenge, we need not decide the issue of standing.

adding former § 4010 et seq., currently codified in § 116270 et seq.; see *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 268 [115 Cal.Rptr.2d 874, 38 P.3d 1098]; *Paredes v. County of Fresno* (1988) 203 Cal.App.3d 1, 5 [249 Cal.Rptr. 593].) The SDWA was meant to reduce to the lowest level feasible all concentrations of toxic chemicals in drinking water that may cause cancer, birth defects and other chronic diseases. (§ 116270, subd. (d).) In this regard, the SDWA "establishes standards at least as stringent as the federal SDWA and is intended to be 'more protective of public health' than the minimum federal standards." (*Hartwell Corp v. Superior Court, supra,* 27 Cal.4th at p. 268, citing §§ 116270, subd. (f), 116325.) Because the SDWA is a remedial act intended to protect the public from contamination of its drinking water, we are required to construe it broadly to accomplish its protective purpose. (*Western States Petroleum Assn. v. State Dept. of Health Services* (2002) 99 Cal.App.4th 999, 1008 [122 Cal.Rptr.2d 117].)

■ In the SDWA, the Legislature delegated to Department "the initial and primary authority, and the corresponding responsibility, for establishing drinking water standards. (§§ 116270, subd. (g), 116275, subds. (c) & (d); see also § 116610, subds. (c) & (d).) Courts must respect this primary delegation of authority." (*Western States Petroleum Assn. v. State Dept. of Health Services, supra,* 99 Cal.App.4th at p. 1008.) One of Department's responsibilities under the SDWA is to establish "primary drinking water standards that include the maximum levels of contaminants which, in [its] judgment, may have an adverse effect on the health of persons." (*Id.* at p. 1002, citing §§ 116275, subd. (b), 116365.) Department is also responsible for reviewing and revising public health goals for contaminants in drinking water, including preparing health risk assessments for any contaminants deemed carcinogenic or acutely toxic. (§§ 116360, 116365, 116375.) With respect to acutely toxic substances, the maximum contaminant level (MCL) is set at a level that will avoid any known or anticipated adverse effects on public health with an adequate margin of safety. (§ 116365, subd. (a)(1).) With respect to carcinogens, the MCL is set at a level that will avoid any risk to public health. (§ 116365, subd. (a)(2); see also Cal. Code Regs., tit. 22, §§ 64431 [MCL for inorganic chemicals], 64444 [MCL for organic chemicals].) ■ City is required to ensure its public water system complies with the primary and secondary drinking water standards established by Department. (§ 116555, subd. (a)(1).) To ensure these standards are met, the SDWA provides comprehensive administrative procedures for the issuance of permits to operate public water systems (§§ 116525–116580), regulation of the quality of the water supply (§§ 116325–116395), enforcement of regulations and correction of violations (§§ 116625–116655), judicial review (§ 116700) and imposition of civil and criminal penalties (§§ 116725, 116730).

Effective September 29, 1996, section 116410 was added to the SDWA, requiring public water systems with at least 10,000 service connections to be fluoridated "to promote the public health of Californians of all ages through the protection and maintenance of dental health, a paramount issue of statewide concern." (§ 116410, subd. (a).) This provision requires Department to adopt regulations mandating the fluoridation of public water systems. (*Ibid.*)[5] The SDWA also prescribes the administrative procedure to be followed when a public water system intends to fluoridate its drinking water, including an application to amend the water system's existing permit (§ 116550, subd. (a)), investigation of the proposed plan by Department (§ 116535), a public hearing on the application (§ 116545) and Department's denial or issuance of a permit amendment, including any conditions necessary to assure pure, wholesome water that does not endanger the health of consumers (§ 116540).

Although fluoridation has been and continues to be a controversial issue, "[c]ourts through[out] the United States have uniformly held that fluoridation of water is a reasonable and proper exercise of the police power in the interest of public health. [Citations.] The matter is no longer an open question." (*Beck v. City Council of Beverly Hills* (1973) 30 Cal.App.3d 112, 115 [106 Cal.Rptr. 163]; see also *deAryan v. Butler* (1953) 119 Cal.App.2d 674, 682 [260 P.2d 98] [addition of fluoride to water supply, as directed by resolution of city council, was valid exercise of police power of City of San Diego].)

The *manner* of fluoridation, challenged by Coshow in this case, is also prescribed by the SDWA and its implementing regulations, which mandate the concentration of fluoride in drinking water supplied to the public. (§ 116410, subds. (a), (b)(1) & (2).) For example, the regulations adopted by Department set forth the optimal fluoride levels based on daily air temperatures (Cal. Code Regs., tit. 22, § 64433.2), the MCL's for inorganic chemicals such as fluoride and arsenic (Cal. Code Regs., tit. 22, § 64431, subd. (a)), and the detection limits for purposes of reporting contaminants such as lead (Cal. Code Regs., tit. 22, § 64678, subd. (a)). Additionally, the regulations contain extensive monitoring and compliance requirements (Cal. Code Regs., tit. 22, § 64433.3) and impose stringent recordkeeping, reporting and notification requirements for fluoridating water systems (Cal. Code Regs., tit. 22, § 64433.7). Although the SDWA and its implementing regulations provide specific mechanisms to ensure the drinking water is safe for all consumers, including City's residents, the water need not be completely free of contaminants for which there are MCL's and detection limits. "While pure water is an objective of the state, statutory and regulatory standards do not

---

[5] These regulations, adopted by City and other public water systems, are contained in California Code of Regulations, title 22, section 64433.3 et seq.

require that water be entirely pure; and few, if any, water supplies are entirely clear of a broad range of contaminants. (See Cal. Code Regs., tit. 22, §§ 64444, 64449, 64450.)" (*Western States Petroleum Assn. v. State Dept. of Health Services, supra,* 99 Cal.App.4th at p. 1015.)

■ Before a particular chemical is added to drinking water as part of the treatment process, it must first be tested and certified as meeting the specifications of the American National Standard Institute/National Sanitation Foundation Standard 60 (ANSI/NSF 60). (Cal. Code Regs., tit. 22, § 64700, subd. (a).) HFSA meets this standard as an approved chemical additive under the regulations, and Coshow does not claim otherwise. (See *Commonwealth of PA., Dept. of Env. Res. v. Bierman* (Pa. 1976) 23 Pa.Commw. 646 [354 A.2d 48, 50–51] [use of HFSA to fluoridate public water supply was not "prejudicial to public health"].) Thus, the statutory and regulatory schemes allow fluoridating agents, including HFSA, to contain contaminants (such as arsenic and lead) as long as those agents comply with MCL's and detection limits.

B

*City's Choice of HFSA as a Fluoridation Agent Is a
Legislative Function*

■ Coshow does not challenge Department's broad statutory authority, mandated by express legislative directive, to choose a method for fluoridation or to determine the level of contamination in City's drinking water. (See *Western States Petroleum Assn. v. State Dept. of Health Services, supra,* 99 Cal.App.4th at p. 1011 [if the maximum contaminant level set by Department is not arbitrary and capricious, it is not inconsistent with Department's statutory authority].) Instead, Coshow contends he was entitled to a declaratory judgment that City's admitted conduct of "discharging arsenic into the water," through the use of HFSA as required and approved by Department, violates his fundamental constitutional rights. Regardless of how Coshow frames his argument, his objection is, in essence, to the particular chemical chosen to comply with the legislatively mandated fluoridation plan.[6]
■ However, that choice necessarily involved a determination and weighing of facts and policies pertaining to fluoridation of water supplies. "This is a distinctively legislative process, and a court does not have the authority to exercise its independent judgment with respect to the performance of legislative functions." (*Western States Petroleum Assn. v. State Dept. of Health*

---

[6] Indeed, this is shown in Coshow's opposition to City's and Department's motions in limine to dismiss claims, where he argued HFSA "is extremely dangerous as being harmful to health and there are safe and effective alternatives in the form of [s]odium [f]luoride available at the same cost . . . but without the same harmful invasion of one's bodily integrity."

*Services, supra,* 99 Cal.App.4th at p. 1007; see also *Hughes v. City of Lincoln* (1965) 232 Cal.App.2d 741, 747 [43 Cal.Rptr. 306] [decision to fluoridate is legislative rather than administrative].)

The SDWA itself empowers Department to approve methods of fluoridation. (§ 116410, subd. (a).) Department's selection of a particular tested and certified fluoridation chemical is made in the context of a comprehensive and highly regulated statutory scheme with a goal of providing pure, wholesome and potable water. Water quality standards are the product of Department study and expertise. (*Hartwell Corp. v. Superior Court, supra,* 27 Cal.4th at p. 271.) We cannot reweigh the various considerations, guided by stringent regulations, which led to Department's choice of HFSA and to City's approval of that choice.

The record shows Coshow sued City in September 2001 after it directed its staff to implement a fluoridation plan in compliance with the SDWA but before City applied to Department for a permit to begin fluoridation. Coshow initially challenged the constitutionality of fluoridation in general, but when unsuccessful on that ground, Coshow's lawsuit evolved into a challenge to the particular fluoridation chemical used (HFSA). At no time before the issuance of the permit in July 2004 did Coshow voice his concern about the dangers of using HFSA or request a hearing on City's permit application under section 116545 to investigate whether using HFSA would exceed the MCL's of any primary drinking water standard or public health goal, including those for arsenic and lead, under section 116365. Moreover, the record does not show Coshow submitted to Department, for its consideration in connection with City's application for a permit, any of the extensive information about the risks and dangers of HFSA that he alleged in, and attached as exhibits to, his fourth amended complaint. In light of the comprehensive procedures and remedies established by the SDWA to ensure public water systems deliver pure and safe water to their consumers, any challenge to the propriety of using HFSA to fluoridate the water should have been made at the administrative level.

C

*Coshow Cannot State a Claim for Violation of the Right to Privacy or Bodily Integrity*

In an attempt to state a cause of action for declaratory and injunctive relief based on a constitutional violation, Coshow characterizes City's fluoridation plan as "forced medication" with potential adverse consequences to human health, or with a chemical that has not been approved by the FDA for such medicinal purposes, thereby implicating his fundamental rights to bodily

integrity and privacy under the Ninth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the California Constitution. He claims the right to be free from forced medication contaminated with arsenic is a fundamental one, requiring strict scrutiny review.

### 1. *No fundamental constitutional right is involved here*

The guarantee of due process of law includes a substantive component which prohibits the government from infringing on certain "fundamental" liberty interests unless the infringement is narrowly tailored to serve a compelling state interest. (*Washington v. Glucksberg* (1997) 521 U.S. 702, 721 [138 L.Ed.2d 772, 117 S.Ct. 2258, 117 S.Ct. 2302]; *Reno v. Flores* (1993) 507 U.S. 292, 301–302 [123 L.Ed.2d 1, 113 S.Ct. 1439].) An analysis of whether a fundamental right has been violated begins with a "careful description" of the asserted fundamental liberty interest because " 'the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " (*Reno v. Flores, supra,* 507 U.S. at p. 302; see *Washington v. Glucksberg, supra,* 521 U.S. at p. 721; *Chavez v. Martinez* (2003) 538 U.S. 760, 776 [155 L.Ed.2d 984, 123 S.Ct. 1994] [vague generalities, such as " 'the right not to be talked to,' " are insufficient].) Only rights " 'deeply rooted in this Nation's history and tradition' " and " 'implicit in the concept of ordered liberty' " are recognized as fundamental. (*Washington v. Glucksberg, supra,* 521 U.S. at p. 721; *Moore v. East Cleveland* (1977) 431 U.S. 494, 503, 546 [52 L.Ed.2d 531, 97 S.Ct. 1932].)

In his fourth amended complaint, Coshow alleges City's use of HFSA to fluoridate the public drinking water violates his fundamental right "to preserve [his] health from such government-imposed practices as may prejudice or annoy it." However, given this vague and general assertion of a fundamental liberty interest, we must heed the Supreme Court's advice against expanding "the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." (*Collins v. Harker Heights* (1992) 503 U.S. 115, 125 [117 L.Ed.2d 261, 112 S.Ct. 1061].) When we view the asserted right in the factual context of this case, it is evident Coshow is seeking to establish a right to public drinking water of a certain quality or, more specifically, a right to drinking water uncontaminated with HFSA.

In determining whether this right is fundamental, we do not compare its "relative societal significance" to other public entitlements, nor do we consider whether public drinking water free of HFSA is as important a right as any other constitutionally protected right. (*San Antonio School District v. Rodriguez* (1973) 411 U.S. 1, 33 [36 L.Ed.2d 16, 93 S.Ct. 1278].) Rather, we

assess whether there is such a right "explicitly or implicitly guaranteed by the Constitution." (*Id.* at pp. 33–34.) We conclude no such fundamental right exists.

 The mere novelty of claiming a fundamental right to public drinking water free of HFSA is sufficient to create a doubt whether such a right is protected by substantive due process because it is not " 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " (*United States v. Salerno* (1987) 481 U.S. 739, 750–751 [95 L.Ed.2d 697, 107 S.Ct. 2095]; see *Reno v. Flores, supra,* 507 U.S. at p. 303.) The Legislature's deliberate choice to fluoridate the state's drinking water despite the presence of certain contaminants in the fluoridation process likewise compels the conclusion the right to drinking water free of HFSA is not a fundamental one explicitly or implicitly guaranteed by the Constitution. (*Concerned Citizens of Nebraska v. U.S. Nuc. Reg.* (8th Cir. 1992) 970 F.2d 421, 426–427.) As we previously discussed, courts throughout the United States have uniformly upheld the constitutionality of adding fluoride to the public water supply as a reasonable and proper exercise of the police power in the interest of public health. (*Beck v. City Council of Beverly Hills, supra,* 30 Cal.App.3d at p. 115.) No court has recognized a substantive due process claim entitling citizens to drinking water in a form more pure than that required by federal and state drinking water standards.

 There is no dispute the right to bodily integrity is a fundamental right which limits the traditional police powers of the state in the context of public health measures under the federal and state Constitutions. (*Jacobson v. Massachusetts* (1905) 197 U.S. 11 [49 L.Ed. 643, 25 S.Ct. 358]; *Cruzan v. Director, Missouri Dept. of Health* (1990) 497 U.S. 261, 278 [111 L.Ed.2d 224, 110 S.Ct. 2841]; *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 530 [110 Cal.Rptr.2d 412, 28 P.3d 151] [competent adult has the right to refuse medical treatment].)[7] However, the right to bodily integrity is not coextensive with the right to be free from the introduction of an allegedly contaminated substance in the public drinking water. Neither the state nor federal Constitution guarantees a right to a healthful or contaminant-free environment. (*Concerned Citizens of Nebraska v. U.S. Nuc. Reg., supra,* 970 F.2d at pp. 426–427 [no fundamental right to be free of nonnaturally occurring radiation]; *In re "Agent Orange" Product Liability Litigation* (E.D.N.Y. 1979) 475 F.Supp. 928, 934 [no constitutional right to healthful environment based on spraying foliage with chemical agents]; *Gasper v. Louisiana Stadium and Expo. Dist.* (E.D.La. 1976) 418 F.Supp. 716, 721 [no

---

[7] Contrary to Coshow's argument on appeal, the trial court did not conclude the right to bodily integrity is not a fundamental right. Rather, the court concluded Coshow alleged "a right to safe drinking water and/or a toxic-free environment," which has not been recognized as a fundamental constitutional right.

fundamental right to breathe clean air free of tobacco smoke].) Although Coshow alleged he had a fundamental right to bodily integrity, there simply is no such right in the context of public drinking water.[8] In this regard, Coshow has identified no particular fundamental right which he claims City and Department have infringed by their approval and use of HFSA to fluoridate the drinking water.

### 2. *Fluoridation using HFSA is not forced medication*

Coshow contends he is being forced, without his consent, to drink the municipal water containing a drug which has never been tested or approved by the FDA to treat dental caries and which is dangerous to his health and the health of other residents because of the high levels of arsenic in HFSA. He asserts the use of municipal water as the drug delivery system is forced medication in violation of his constitutional rights.

■ " '[A] competent adult has the right to refuse medical treatment, even treatment necessary to sustain life.' " (*In re Qawi* (2004) 32 Cal.4th 1, 14 [7 Cal.Rptr.3d 780, 81 P.3d 224]; see *Cruzan v. Director, Missouri Dept. of Health, supra,* 497 U.S. at p. 278.) However, the right to be free from forced medication is not a fundamental constitutional right in the context of adding fluoride or other chemicals to public drinking water. City's use of HFSA to fluoridate its drinking water does not *force* Coshow to do anything. Fluoridation occurs before it enters each household and stops with the water faucet. The HFSA in the water is not directly introduced into Coshow's or other residents' bloodstreams. Because Coshow is not compelled to drink the fluoridated water, his freedom to choose not to ingest HFSA remains intact. (See *Quiles v. City of Boynton Beach* (Fla.Dist.Ct.App. 2001) 802 So.2d 397, 399 [water fluoridation did not violate plaintiff's constitutional right to refuse medical treatment]; *Kraus v. Cleveland* (1955) 163 OhioSt. 559 [127 N.E.2d 609, 613] [fluoridation does not constitute mass medication].)

Fluoridating public drinking water with approved chemicals (such as HFSA) is clearly distinguishable from the invasive and highly personalized medical treatments used in cases where the state sought to override a person's freedom to choose and where the Supreme Court has recognized a liberty interest in freedom from such unwanted medical treatment. (See *Sell v. United States* (2003) 539 U.S. 166 [156 L.Ed.2d 197, 123 S.Ct. 2174] [forced administration of antipsychotic drugs on criminal defendant]; *Riggins v. Nevada* (1992) 504 U.S. 127 [118 L.Ed.2d 479, 112 S.Ct. 1810] [same]; *Cruzan v. Director, Missouri Dept. of Health, supra,* 497 U.S. 261 [use of

---

[8] For similar reasons, Coshow's constitutional right to privacy is not at issue here. The cases on which Coshow relies, including *Roe v. Wade* (1973) 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705], do not apply in the context of public drinking water.

life-sustaining medical treatment for an individual unable to decline the treatment]; *Jacobson v. Massachusetts, supra,* 197 U.S. 11 [mandatory small-pox vaccination]; *In re Qawi, supra,* 32 Cal.4th 1 [right to refuse antipsy-chotic medication].) Unlike cases that "involve the state's power to physically force 'artificial life-support' directly into the body of an individual claiming the right to refuse such treatment," supplying fluoridated water using HFSA is not a medical procedure which is subject to constitutional protections. (*Quiles v. City of Boynton Beach, supra,* 802 So.2d at p. 399; *Kraus v. Cleveland, supra,* 127 N.E.2d at p. 613.)

 The statutes and regulations requiring fluoridation of public water supplies as a means of combating dental caries is a valid exercise of the state's police power with respect to public health. In this regard, chemicals, which in their concentrated or basic state may be poisonous, are often introduced into water for the purpose of purification or to protect and preserve health. (*Beck v. City Council of Beverly Hills, supra,* 30 Cal.App.3d at p. 115.) When used in an extensively regulated fluoridation program which complies with the SDWA, Department ensures the type and amount of any chemicals introduced into the public water supply are not impure or danger-ous to the public. (30 Cal.App.3d at p. 115.) We presume Department will act properly and perform its duty to ensure "the condition of the water, as ultimately distributed, is one of purity and potability." (*Ibid.*) Thus, introduc-ing chemicals such as HFSA into the public drinking water does not constitute an infringement of the constitutional right of privacy to be free from forced medication.[9]

### 3. *Fluoridation with HFSA satisfies the rational basis test under due process principles*

 "Generally, the constitutional guaranty of substantive due process protects against arbitrary legislative action; it requires legislation not to be 'unreasonable, arbitrary or capricious' but to have 'a real and substantial relation to the object sought to be attained.' [Citation.] Thus, legislation does not violate substantive due process so long as it reasonably relates 'to a proper legislative goal.' " (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300]; see also *Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 440 [87 L.Ed.2d 313, 105 S.Ct. 3249] [in the absence of a fundamental right, rational basis standard applies and legislation is presumed valid if state action is rationally related to legitimate state purpose].)

 Where, as here, the challenged action primarily concerns health and safety, no fundamental right to privacy is at stake. (*Wilson v. California*

---

[9] Even if, as argued by Coshow, HFSA is a drug, we nevertheless conclude fluoridating public drinking water with HFSA is not forced medication.

*Health Facilities Com.* (1980) 110 Cal.App.3d 317, 322 [167 Cal.Rptr. 801].) Consequently, when the state asserts important interests in safeguarding health, review is under the rational basis standard. (*Ibid.*, citing *Roe v. Wade, supra*, 410 U.S. at pp. 163–165 [state may, without encroaching on any right of privacy, further its important interests in the areas of health and safety].) In the area of health and health care legislation, there is a presumption both of constitutional validity and that no violation of privacy has occurred. (*People v. Privitera* (1979) 23 Cal.3d 697, 707–709 [153 Cal.Rptr. 431, 591 P.2d 919]; *Wilson v. California Health Facilities Com., supra*, 110 Cal.App.3d at p. 324.)

▮ The actions of City and Department in fluoridating the public drinking water with HFSA are clearly mandated by the Legislature and permitted under the applicable regulations. Water fluoridation is integrally related to a strong state interest—public health—and the manner of accomplishing this objective is a cost-effective way of providing dental protection to residents. As we previously discussed, the type and amount of any chemical City intends to use to fluoridate its water must be approved by Department. (§ 116550, subd. (a).) Use of a particular chemical is prohibited unless it meets exacting standards and specifications. (Cal. Code Regs., tit. 22, § 64700.) Department is required to investigate City's fluoridation plan to ensure the provision of pure, wholesome water that does not endanger the health of consumers. In this regard, City's use of HFSA, which meets required standards and specifications, is rationally related to the statutory objective of protecting dental health through the fluoridation of drinking water. Coshow's disagreement with City's choice of an approved fluoridating agent does not render that choice constitutionally defective.

IV

*The Court Properly Excluded Evidence that HFSA is a Drug
Not Approved by the FDA to Treat or Prevent Dental Caries*

In his fourth amended complaint, Coshow alleged HFSA has never been evaluated and approved by the FDA for safety and effectiveness in reducing tooth decay. The court granted City's and Department's in limine motions to exclude evidence concerning lack of FDA approval of HFSA on the ground it was irrelevant. Coshow contends the court should have considered this evidence in determining whether use of HFSA, viewed under the strict scrutiny test, violated his fundamental constitutional rights.

As we previously concluded, no fundamental constitutional right was implicated by City's use of HFSA, as approved by Department, and thus no strict scrutiny analysis was required. In any event, whether HFSA received

FDA approval for purposes of treating dental caries was not relevant to Coshow's claim City's fluoridation plan is illegal and harmful to the public health, and unconstitutional as an infringement of privacy and bodily integrity.

■ The FDA, in its oversight of food, drugs and cosmetics, regulates fluoride as an anticaries drug in a variety of over-the-counter products such as toothpastes, gels and rinses. (21 C.F.R. §§ 355.1, 355.3 (2005).) In this capacity, the FDA establishes the types of fluoride compounds and their concentrations that may be used in products (21 C.F.R. § 355.10) as well as packaging and labeling requirements (21 C.F.R. §§ 355.20, 355.50, 355.55, 355.60). The FDA's approval of fluoride compounds is limited to fluoridated products in forms "suitable for topical administration to the teeth . . . ." (21 C.F.R. § 355.1.) The FDA also regulates fluoride in bottled water,[10] which .may optionally contain fluoride added within certain established limitations. (21 C.F.R. § 165.110 (a)(1) & (b)(4)(ii).) The FDA's authority over food, drugs and cosmetics, including its regulation of fluoride in various products, does not extend to public supplies of drinking water.

■ The legislative goal of the SDWA to provide California's citizens with pure and safe drinking water requires Department to adopt standards for contaminants in drinking water no less stringent than those adopted by the EPA. To ensure these standards, the Office of Environmental Health Hazard Assessment must prepare and publish an assessment of the risks to public health posed by each contaminant, including arsenic, for which Department proposes a primary drinking water standard. (§§ 116361, 116365, subd. (c)(1).) Nothing in the comprehensive statutory and regulatory scheme of the SDWA requires a risk assessment of contaminants by the FDA or FDA approval of any chemical added to the public drinking water. Thus, the court properly excluded this evidence as irrelevant.

V

*City's Use of HFSA, as Approved by Department, Was Not*
*an Illegal Expenditure of Public Funds*

■ In his fourth amended complaint, Coshow unsuccessfully sought injunctive relief against City on the ground its use of HFSA to fluoridate the drinking water is an illegal expenditure of public funds because it violates Penal Code section 374.8. That statute creates criminal penalties for any

---

[10] "Bottled water is water that is intended for human consumption and that is sealed in bottles or other containers with no added ingredients except that it may optionally contain safe and suitable antimicrobial agents." (21 C.F.R. § 165.110 (a)(1) (2005).)

person who knowingly causes any hazardous substance to be deposited into the waters of the state. (Pen. Code, § 374.8, subd. (b).)

 Under Code of Civil Procedure section 526a, a taxpayer may challenge wasteful or illegal government action that otherwise would go unchallenged because of standing requirements. (*Vasquez v. State of California* (2003) 105 Cal.App.4th 849 [129 Cal.Rptr.2d 701].) To state a claim, the taxpayer must allege specific facts and reasons for the belief the expenditure of public funds sought to be enjoined is illegal. " 'General allegations, innuendo, and legal conclusions are not sufficient . . . .' " (*Ibid.*)

A cause of action under Code of Civil Procedure section 526a will not lie where the challenged governmental conduct is legal. (*Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 [46 Cal.Rptr.2d 177].) Conduct in accordance with regulatory standards "is a perfectly legal activity." (*Machado v. State Water Resources Control Bd.* (2001) 90 Cal.App.4th 720, 729 [109 Cal.Rptr.2d 116].) Further, a taxpayer is not entitled to injunctive relief under Code of Civil Procedure section 526a where the real issue is a disagreement with the manner in which government has chosen to address a problem because a successful claim requires more than "an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion." (*Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1138 [232 Cal.Rptr. 814, 729 P.2d 80].)

Here, City's exercise of its police power to fluoridate the water using HFSA cannot constitute illegal conduct. City is required by law to fluoridate its water system (§ 116409) and can do so only after Department investigates the fluoridation plan and approves an amendment to City's permit (§§ 116525–116550). City's fluoridation plan must meet MCL's and other water quality standards established by Department under the SDWA. (§ 116555.) If Department determines these standards have been met, City's fluoridation plan will have complied with state law governing the use of a particular chemical in the fluoridation of the public water system. Because Department approved City's use of HFSA to fluoridate its water supply, no illegal conduct occurred and thus, there was no illegal expenditure of public funds under Penal Code section 374.8.[11]

---

[11] Having independently reviewed the trial court's ruling granting City's and Department's motions for judgment on the pleadings, we need not address Coshow's contention the court's factual findings are unsupported by the evidence and were improperly applied to grant the motion. (*Schabarum v. California Legislature, supra,* 60 Cal.App.4th at pp. 1216–1217 [reviewing court conducts appropriate analysis regarding judgment on the pleadings and need not defer to trial court; court's dismissal may be upheld even if motion granted for wrong reason].)

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Irion, J., concurred.

A petition for a rehearing was denied September 12, 2005, and appellants' petition for review by the Supreme Court was denied November 30, 2005.