[No. B221229. Second Dist., Div. Five. Sept. 30, 2010.]

STEPHEN F. SILVERS et al., Plaintiffs and Appellants, v.
BOARD OF EQUALIZATION et al., Defendants and Respondents;
STEVE POIZNER, as Insurance Commissioner, etc., Intervener and
Respondent.

## COUNSEL

Steven W. Murray; The Hanagami Law Firm and William K. Hanagami for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Paul D. Gifford, Assistant Attorney General, Felix E. Leatherwood and Diane S. Shaw, Deputy Attorneys General, for Defendants and Respondents State Board of Equalization and Ramon J. Hirsig.

Sonnenschein Nath & Rosenthal, Sanford Kingsley, Daniel R. Brown and Katherine Evans for Defendant and Respondent Lexington Insurance Company.

Edmund G. Brown, Jr., Attorney General, W. Dean Freeman, Felix E. Leatherwood and Lisa W. Chao, Deputy Attorneys General, for Intervener and Respondent.

## OPINION

KUMAR, J.[*]—

## I. INTRODUCTION

Two categories of insurance carriers provide property and casualty insurance in California: insurers licensed by the Department of Insurance (DOI) and "surplus line insurers." Licensed insurers, also known as "admitted insurers," have a presence in California, have full access to the insurance market, and are statutorily "entitled to transact insurance business" in California (Ins. Code, § 24).[1] On the other hand, surplus line insurers, a subset of the "nonadmitted" insurance market, are not licensed by California and have no presence in California. Although a surplus line insurer is generally precluded

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Insurance Code unless otherwise stated.

from transacting insurance business in California, the company may issue policies to California residents when (a) the insurance to be provided is statutorily sanctioned as appropriate for surplus line insurers; (b) the coverage sought to be provided (e.g., amusement parks, movie/entertainment ventures) is not available from an admitted insurer; and (c) the Insurance Commissioner has determined that the company is of satisfactory financial stability and reputation to protect the public interest. (See §§ 1763, 1765.1.)

The issue presented is whether surplus line insurance premiums are subject to being twice taxed—first with a statutorily based 3 percent surplus line premium tax to be paid by brokers or the insured (if the policy is obtained without the assistance of a broker) and, second, with a 2.35 percent premium tax imposed on the nonadmitted insurance company for "doing business in" California under article XIII, section 28 of the California Constitution (Section 28).

We affirm the judgment because, following a court trial, the trial court correctly ruled that surplus line insurance premiums are not subject to this double tax. It is undisputed that the surplus line premium is subject to a 3 percent tax. But, the policy premium is not subject to an additional Section 28 tax because the nonadmitted insurance company issuing the insurance policy is prohibited from "doing business" in California. It would be anomalous to sanction a nonadmitted insurance company's conduct as lawfully providing surplus line insurance and yet impose, on that company, a Section 28 premium tax for "doing business" in this state—i.e., an unlawful act.

## II. BACKGROUND

Pursuant to Code of Civil Procedure section 526a,[2] appellants Stephen F. Silvers and Steven Gold (S&G) filed a complaint for declaratory relief against respondents the state's Board of Equalization (SBE) and its executive director as well as Lexington Insurance Company (Lexington). The complaint alleged Lexington had failed to pay Section 28 taxes and sought a declaration that the SBE was obligated to collect those taxes. Respondent California Insurance Commissioner Steve Poizner (Commissioner) filed a complaint intervening in the action.

A court trial was conducted. The material facts are undisputed and, given the issue on appeal, can be briefly stated. Lexington, an insurer not licensed in California, issued policies in California as permitted by California's

---

[2] Code of Civil Procedure section 526a confers standing to individual taxpayers to challenge governmental action that amounts to wasteful or illegal expenditure of public funds. (*California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1281 [36 Cal.Rptr.2d 404]; *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 714 [34 Cal.Rptr.3d 19].)

surplus line insurer laws. As a surplus line insurer, Lexington was not permitted to have offices, agents or employees in California and was required to conduct all of its activity outside of California. Although Lexington did not pay Section 28 premium taxes over a period of 10 years, neither the SBE nor the DOI proposed deficiency assessments for the missing taxes because both entities took the position that tax obligations related to the premiums were covered by existing laws that imposed a 3 percent premium tax on the brokers responsible for the insurance contracts or on the policy holders if no brokers were used.[3]

The trial court ruled the Section 28 tax applied only to insurance premiums collected by admitted insurers. Thus, as a surplus line insurer, Lexington was not required to pay the tax. Judgment was entered in favor of respondents.

### III. DISCUSSION

#### A. Standard of Review

We review the trial court's ruling de novo because the case concerns the application of constitutional and statutory provisions to undisputed facts. (*Chen v. Franchise Tax Bd.* (1998) 75 Cal.App.4th 1110, 1114 [90 Cal.Rptr.2d 268]; *Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5 [77 Cal.Rptr.2d 581].)

#### B. Section 28 Does Not Impose a Second Tax on Surplus Line Premiums

Adopted in 1974, Section 28 provides, in pertinent part, that insurers "doing business in this state" are subject to a 2.35 percent tax on premiums. (Cal. Const., art. XIII, § 28, subds. (b), (c), (d).) This tax is to be assessed by the SBE. (Cal. Const., art. XIII, § 28, subd. (h).)

In 1993, the Legislature enacted the Nonadmitted Insurance Tax Law which, in pertinent part, provided that those who purchase surplus line insurance directly from the insurance company are responsible for a 3 percent tax on the premium. (Rev. & Tax. Code, § 13210, subd. (a).) Two bill analyses clearly explained the need for the law.

The bill analysis prepared by the Senate Revenue and Taxation Committee indicates: "EXISTING LAW (Constitution) imposes a 2.35% tax on the

---

[3] All policies issued by Lexington to California policyholders were either placed through licensed surplus line brokers or as a result of a direct insurance placement with Lexington. If the policies were placed through a broker, the 3 percent premium tax was paid by the broker. If the policy was a direct placement policy, the purchaser of the policy paid the 3 percent premium tax.

amount of gross premiums written with admitted insurers (insurers examined and regulated by the Insurance Commissioner). . . . [¶] Existing law [(Ins. Code, § 1775.5)] also imposes a 3% tax on gross premiums written by . . . 'surplus line brokers' (brokers who deal in insurance written by nonadmitted insurers). [¶] There is currently no tax imposed on insurance acquired directly from nonadmitted insurers . . . . [¶] THIS BILL would impose a 3% Nonadmitted Insurance Tax—a tax on insurance purchased directly from the insurer without the aid of a broker." (Sen. Revenue & Taxation Com., Sen. Bill No. 625 (1993–1994 Reg. Sess.) as amended May 4, 1993, p. 1.) "The bill is intended to tap a new revenue source, and at the same time 'level the playing field' between surplus line brokers who must currently pay the 3% surplus line broker tax, and those who obtain insurance tax free by dealing directly with nonadmitted insurers, and thereby receive a competitive advantage." (*Ibid.*)

Similarly, the bill analysis provided by the Assembly Committee on Revenue and Taxation recognized that existing law did not impose any premium tax on insurance acquired directly from nonadmitted insurance companies and that the bill was designed to "close the loophole whereby large businesses are able to bypass a surplus line broker and purchase [nonadmitted], and non-taxed, insurance from outside of California." (Assem. Com. on Revenue & Taxation, Sen. Bill No. 625 (1993–1994 Reg. Sess.) as amended July 12, 1993, p. 2.)

■ In assessing the need for the Nonadmitted Insurance Tax Law, the Legislature correctly determined Section 28 was not applicable to surplus line insurers. Section 28 unambiguously states it is applicable to insurance companies "doing business" in California. However, a nonadmitted company that is legitimately providing surplus line insurance is (1) not licensed in California (§§ 1760, subd. (a), 1765.1); and (2) may not have a person, other than a licensed surplus line insurance broker, "transact any insurance on property located or operations conducted within, or on the lives or persons of residents of [California]" (§ 1761). In other words, as characterized by Lexington's expert, the surplus line insurer must not have employees in California and must conduct all of its activities outside of California. Thus, a lawfully operating surplus line insurance company is precluded from "doing business" in California.

Moreover, even if a surplus line insurer uses the services of a broker to acquire insurance for California residents, the Legislature has specifically

recognized that the "[p]lacement activities of a licensed surplus line broker[4] . . . , including, but not limited to, policy insurance, *shall not be deemed or construed to be business done by the insurer* in this state." (§ 1776, italics added.) It stands to reason that, if a surplus line insurer is not doing business in California by allowing a broker to engage in the solicitation and placement of its policies for California residents then, similarly, a surplus line insurer that directly places policies in California is also not doing business in California. Both placements are at the direction of the insurance company. Indeed, no party suggests the premiums on direct placement surplus line policies should be treated any differently from premiums on broker-assisted placement of the same policies.

■ The statutory scheme rationally requires the policy holder or the surplus line broker to pay a tax on surplus line premiums because it is those parties who, by their activities and/or presence in California, *directly* benefit from California's protections (e.g., police) and services (e.g., transportation). Lexington did not have an office, employees or bank accounts in California. It did not directly receive premiums in California from its insureds, or physically issue or deliver policies in California. Although Lexington was the lawful insurer of surplus line policies issued to California residents, it adhered to the rule that, as a nonadmitted company, it could not "transact insurance business in [California]" (§ 25).

Accordingly, the premiums on Lexington's surplus line policies were not subject to a Section 28 tax. To conclude otherwise would imply that Lexington was acting unlawfully in California even though it was in compliance with surplus line regulations.

### C. The *Illinois Commercial* Decision

Consistent with their position in the trial court, S&G rely heavily on *Illinois Commercial Men's Association v. State Bd. of Equalization* (1983) 34 Cal.3d 839 [196 Cal.Rptr. 198, 671 P.2d 349] (*ICMA*). The *ICMA* decision does not impact the outcome of this case.

The plaintiffs in *ICMA* were unlicensed foreign insurers[5] that solicited business in California from outside the state and that used independent California contractors in connection with the administration of claims and other matters. (*ICMA, supra,* 34 Cal.3d at p. 843.) These independent

---

[4] The surplus line broker is authorized to "solicit and place insurance . . . with nonadmitted insurers." (§ 1763.) The evidence demonstrated surplus line brokers are "[t]ypically located within the State of California."

[5] A foreign insurance company is "not organized under the laws of [California], whether or not admitted." (§ 27.)

contractors were characterized by the Supreme Court as plaintiffs' agents. (*Id*. at p. 849.) The DOI concluded plaintiffs were "doing business" in California and, pursuant to the former version of Section 28, assessed a tax on premiums received for direct mail insurance sold to California residents. (34 Cal.3d at p. 849.)

The primary issue raised in *ICMA* was whether the Fourteenth Amendment of the United States Constitution allowed California to impose a tax on an unlicensed foreign corporation that conducts its business outside the state by mail. (*ICMA, supra*, 34 Cal.3d at pp. 844–850.) The court found the following "significant": "[T]he investigation and settlement of claims is an integral and crucial aspect of the business of insurance. Either or both of these functions were performed with respect to California policyholders by agents of plaintiffs residing in this state." (*Id*. at p. 849.) Thus, *ICMA* held California could impose such a tax due to the "extent of plaintiffs' activities in [California]" and "that plaintiffs received the benefit of [California's] laws through the protections afforded to their agents in California." (*Id*. at p. 850.)

The issue at hand is not whether California can impose a tax on surplus line policies. Indeed, such a tax is specifically contemplated by statute. The only potentially applicable aspect of *ICMA* is the secondary issue discussed therein, i.e., whether plaintiffs could operate in California tax free because they were not, as required by the California Constitution, "doing business" in California. The Supreme Court resolved this issue by finding plaintiffs' activities in California came within the definition of "doing business" due to plaintiffs' "employment . . . of agents within California to perform important functions in connection with the administration of the policies it had issued to [California] residents." (*ICMA, supra*, 34 Cal.3d at p. 852.)

It may be true that there is no meaningful distinction between the activities of the agents in *ICMA* and the stipulated fact that Lexington hired "licensed persons and at least 12 companies located and licensed in California to investigate and/or adjust claims on Lexington's behalf in California." However, the interplay of statutory schemes is in stark contrast.

There are two key distinctions between *ICMA* and the instant case. First, the insurance companies in *ICMA* were not operating pursuant to a statutory scheme that permitted them, as unlicensed insurance companies, to issue policies. Second, there was no statute in *ICMA* that suggested the issuance of policies was outside the scope of doing business in California. Thus, the imposition of a constitutionally based tax in *ICMA* did not result in the anomaly of imposing a "doing business tax" on an insurance company that is lawfully operating but, because it is unlicensed, is precluded from doing business in California.

Here there exists a specific statutory scheme governing the imposition of tax on premiums resulting from the precise type of policies issued by Lexington as well as statutory language suggesting not only that Lexington is precluded from doing business in California, but that the issuance of surplus line policies does not constitute business done in California. The existence of a statutory scheme permitting and regulating the issuance of surplus line policies casts this case in an entirely different light from *ICMA*. Thus, *ICMA* does not require a finding that lawfully obtained surplus line premiums in California are subject to both a statutory tax *and* a Section 28 tax.

## IV. DISPOSITION

The judgment is affirmed. Respondents are to recover costs on appeal.

Turner, P. J., and Kriegler, J., concurred.

A petition for a rehearing was denied October 19, 2010, and appellant's petition for review by the Supreme Court was denied January 12, 2011, S187895.