Filed 11/1/21  Warren v. County of Sacramento CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DAVID WARREN et al., | C088691 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201800225194CUMCGS ) |
| v. | |
| COUNTY OF SACRAMENTO et al., | |
| Defendants and Respondents. | |

Does the right to privacy include the individual's right to determine which hospital emergency room an ambulance will take the person to during a medical emergency?  The trial court in this case found no such right of privacy exists and entered a judgment against plaintiffs and appellants David Warren and Kathryn C. Warren.

Appellants contend on appeal the trial court erred as they have standing to attack the county protocol, the right to privacy and Probate Code section 4650 give them the right to make the medical decision regarding where an ambulance takes them in a medical emergency, and the Sacramento County protocol that establishes mandatory

1

procedures for medical and emergency transportation is facially invalid to the extent it violates this right. Respondents, County of Sacramento et al., concede the standing issue but argue that the trial court's subsequent determination that appellants failed to identify a protected privacy right within their claim was correct, as was its entry of judgment in favor of respondents, and therefore we should affirm the court's decision.

We agree with the parties that appellants have standing to attack the protocol as facially invalid as they are directly affected by its alleged violation. However, we conclude that the right to privacy does not encompass a right to direct an ambulance to the emergency room of one's choice during a medical emergency. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Sacramento County has authorized the Sacramento County Emergency Medical Services Agency (SCEMSA) "to administer and control the provision of emergency ambulance services, including emergency ambulance services, and to impose affirmative service obligations to be performed by licensees, guaranteeing the adequacy and efficiency of emergency ambulance services to the County, including any incorporated portion thereof." (Sac. County Code, ch. 4, § 4.18.000.) Respondent Dr. Hernando Garzon, the medical director of the SCEMSA, oversees policies regarding the delivery of emergency ambulance services. (Sac. County Code, ch. 4, § 4.18.005.) Among these policies is Sacramento County Emergency Medical Services (EMS) 5000 series, which addresses transportation and patient destination. Policies such as these are periodically reviewed by the SCEMSA Joint Medical Oversight and Operational Oversight Committees, which are comprised of various experts from local prehospital and hospital emergency care systems.

2

EMS policy No. 5050.13 (hereafter 5050.13)[1] governs where ambulances take people. Its stated purpose is "[t]o guide prehospital care personnel in arriving at a destination decision." (5050.13.) The policy states in pertinent part:

"A. The patient meeting special triage criteria shall be transported to the designated Special Triage receiving facility approved by the LEMSA.[2]

"B. Patients likely to require specialized services as identified in treatment protocol may be transported to the most appropriate receiving facility.

"C. If there exists no medical condition that the prehospital personnel believes is unstable and no Special Triage Policy applies, then the patient shall be taken to the facility chosen based on the following (in rank order) decisive factors:

"1. Patient's/Guardian's request (if patient is a minor)

"2. Family/Guardian's request

"3. Private Physician's request

"4. EMS System Resource availability, as determined by SCEMSA in coordination with the EMS Chiefs.

"5. Law Enforcement Request

"D. Law Enforcement shall be responsible for patient in custody.

"E. Direct medical oversight shall be utilized to aid in arriving at a destination decision in the following situations:

"1. Patient's condition is believed to be unstable by the Prehospital personnel's assessment and the destination is not the most accessible facility.

---

[1] 5050.13 was replaced with EMS policy No. 5050.14 on May 1, 2018. Appellants reference both 5050.13 and EMS policy No. 5050.14 throughout the matter. A copy of EMS policy No. 5050.14 was lodged in the administrative record. The trial court based its ruling on 5050.13. Therefore, for the sake of consistency this court will reference the EMS policy in dispute as 5050.13.

[2] Defined elsewhere in the policy as the "Local EMS Agency." (5050.13.)

"2. Special Triage Policy dictates a different destination from the destination based on patients, family/guardian, private physician's, or law enforcement's request.

"3. Control facility makes all destination decisions for a Mass Casualty Incident (MCI) or during a countywide level II, III or IV expanded emergency.

"F. Direct medical oversight, when utilized, shall be the overriding decisive factor in determining destination.

"G. Non-trauma patients under Cardiopulmonary Resuscitation (CPR) shall be taken to the most accessible receiving hospital.

"H. Trauma patients with unstable or obstructed airways or tension pneumothorax(es), that cannot be stabilized, cleared or relieved in the field, shall be taken to the most accessible receiving hospital." (5050.13.)

In late 2015 and early 2016, appellants brought their concerns about the ambulance destination policy to Dr. Garzon's attention. Appellants, a married couple who reside in Sacramento County are both over the age of 70, have suffered numerous cardiac incidents and are at significant risk of stroke. Pursuant to 5050.13, during their ST-Elevation Myocardial Infarction (STEMI[3]) emergencies, ambulances transport them to the nearest qualified hospital, Mercy San Juan Medical Center (Mercy San Juan), rather than to the only hospital where their treating physicians have medical privileges, University of California Davis Medical Center (UC Davis). Appellants asked Dr. Garzon and SCEMSA to create an informed consent exception to 5050.13 so that they could be transported by ambulance to UC Davis during STEMI emergencies. Dr. Garzon declined and found Mercy San Juan had a higher certification for stroke care than UC Davis. His review of appellants' last three emergency transportations found they were appropriately

---

[3] ST-Elevation Myocardial Infarction, a serious form of heart attack. (See *Sharma v. Providence Health & Servs.-Or.* (2018) 289 Ore.App. 644, 648, fn. 2.)

sent to the nearest treatment facility. In addition, there was no support for changing the policy in either of the review committees.

Appellants presented their proposed amendment to 5050.13 to the Sacramento County Board of Supervisors on August 7, 2017. The Sacramento County Board of Supervisors declined to review the proposal, finding it was not within their jurisdiction.

On April 12, 2018, appellants filed a First Amended Complaint against respondents Sacramento County, SCEMSA, Dr. Garzon, and others, asserting 5050.13 violates their right to privacy and the informed consent doctrine. Appellants included a petition for an alternative writ of mandamus or prohibition in addition to seeking declaratory relief. Appellants' first cause of action sought a declaration from the trial court that either the SCEMSA, the Sacramento County Board of Supervisors, or the state agency supervising emergency medical services, the California Emergency Medical Services Authority, be declared the proper entity to review and amend 5050.13. Appellants' second cause of action asked the trial court to declare 5050.13 unconstitutional and unenforceable, both on its face and as construed, in that it violates appellants' right to determine their medical care. The third cause of action, the proposed writ relief, would direct respondents to amend 5050.13 to allow appellants to be transported to the closest appropriate medical facility as determined by appellants.[4]

Appellants' trial brief asserted they sought either an individual exemption to 5050.13 or an individual exemption allowing them to be transported to UC Davis for emergency treatment. They further sought a determination over whether a patient

_____

[4] While the record contains a reference to the trial court sustaining a demurrer to the first and third causes of action while leaving intact the second cause of action seeking declaratory relief, neither the demurrer nor the trial court's ruling on the demurrer are in the administrative record. Since there was a court trial on the standing issue that encompassed a decision on the privacy issue, that question apparently was not resolved in the demurrer.

5

requiring emergency medical transportation, or a person designated to make health care decisions for the person could choose which hospital the person would be taken to. Finally, they sought to determine whether consent to medical treatment applied to if the patient is competent or has designated a person to make medical decisions. Respondents' trial brief argued the court should resolve the constitutionality of 5050.13, appellants failed to identify a recognized right to privacy supporting their claims, the informed consent doctrine was inapplicable, and a writ of mandate cannot compel Dr. Garzon to exercise his discretion in a particular manner or to reach a particular result.

After the trial court requested supplemental briefing on standing, respondents asserted that if appellants failed to establish an applicable privacy right and thereby sought improper declaratory relief, then they failed to establish their causes of action. Lacking a viable cause of action, appellants' motion in limine could be treated as a motion for judgment on the pleadings in order to conserve judicial resources. As to the as-applied challenge, the appellants lacked standing to direct respondents to exercise their discretion in a particular way.

Appellants asserted in their supplemental brief that legislation ensuring the provision of effective and efficient emergency medical care made appellants members of a protected class who use the emergency medical transportation guaranteed by statute. As members of a protected class, they had standing to seek adjudication of their rights under 5050.13.

The parties stipulated to bifurcate the trial with the issue of standing to be addressed first; the appellants clarified that they were electing to pursue their request for declaratory relief based on only a facial constitutional attack upon the protocol and supporting statutes rather than as applied challenge.

Following a review of the pleadings, the trial court found appellants failed to demonstrate that a patient has a constitutional right to privacy entitling them in a medical emergency to require emergency personal to transport them to the hospital of their

6

choice. The trial court further found the right to refuse medical care cases were inapplicable, and, under the rational basis standard, appellants could not prevail. Finding that appellants failed to establish the existence of any justiciable controversy affecting the right to privacy, the trial court concluded that appellants lacked standing to bring their facial challenge seeking declaratory relief that 5050.13 is unconstitutional. The trial court entered judgment in favor of respondents, found appellants failed to demonstrate an actionable right to privacy, and dismissed the action with prejudice.

## DISCUSSION

We begin our analysis with the statutory authority for SCEMSA to promulgate 5050.13.

The Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act (the EMS Act, or the Act) (Health & Saf. Code, § 1797 et seq.)[5] governs emergency medical services in this state. Pursuant to the Act: "The medical direction and management of an emergency medical services system shall be under the medical control of the medical director of the local EMS agency. This medical control shall be maintained in accordance with standards for medical control established by the authority." (§ 1798, subd. (a).)

In addition: "The local EMS agency, using state minimum standards, shall establish policies and procedures approved by the medical director of the local EMS agency to assure medical control of the EMS system. The policies and procedures approved by the medical director may require basic life support emergency medical transportation services to meet any medical control requirements including dispatch, patient destination policies, patient care guidelines, and quality assurance requirements." (§ 1797.220.)

---

[5] Undesignated statutory references are to the Health and Safety Code.

7

Appellants contend declaratory relief is proper under Code of Civil Procedure section 1060 because they have no other recourse to obtain review of 5050.13. They argue that they have properly pleaded a cause of action, their facial challenge to 5050.13, by demonstrating "that SCEMSA's policies pursuant to the ACT's provisions pose an[d] inevitably present total and fatal conflict with applicable constitutional prohibition to Appellants['] right to privacy." According to appellants, under this right they are entitled to make health decisions without interference by respondents, and this right includes the destination hospital for emergency medical treatment. Appellants further assert they have standing to object to the provisions of 5050.13 and to demand that it be amended to provide a reasonable alternative exception to its mandatory emergency medical transportation destination requirement. They also argue that this case addresses a patient's right to make medical decisions rather than a treating physician. Appellants further claim that Probate Code section 4650 applies to this case. Their final argument is that since the Act and the Sacramento County Code guarantee access to available emergency transportation, respondents are members of a protected class who have standing to seek adjudication of their rights under 5050.13, and the trial court's ruling was inconsistent with the statutory provisions concerning ambulance services.

Appellants rely on the California Constitution's privacy guarantee (Cal. Const., art. I, § 1.) We review the facial constitutional challenge to the policy enactment, a pure question of law, de novo. (*Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 90; *Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198, 204.)

The California Constitution provides that all individuals have a right to privacy, which "protects a larger zone in the area of financial and personal affairs than the federal right. [Citations.]" (*Wilson v. California Health Facilities Com.* (1980) 110 Cal.App.3d 317, 324; Cal. Const., art. I, § 1.) A person's medical history and information and the right to retain personal control over the integrity of one's body are protected under the

8

right to privacy. (*People v. Martinez* (2001) 88 Cal.App.4th 465, 474-475; *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 332-333.) Although the right is important, it is not absolute; it "must be balanced against other important interests" and "may be outweighed by supervening public concerns." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37; *Wilson*, at p. 325.)

In a privacy action, "the complaining party must meet three ' "threshold elements" . . . utilized to screen out claims that do not involve a significant intrusion on a privacy interest protected by the state constitutional privacy provision.' [Citation.] The party must demonstrate '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.' [Citation.] This initial inquiry is necessary to 'permit courts to weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.' [Citation.]" (*Lewis v. Superior Court* (2017) 3 Cal.5th 561, 571.)

While the right to privacy allows a person to refuse medical treatment, it does not guarantee a person the right to require a particular treatment or to be treated in a particular manner. In *People v. Privitera* (1979) 23 Cal.3d 697 (*Privitera*), our Supreme Court addressed a constitutional challenge to former section 1707.1, which prohibited the sale of "any drug or device to be used in the diagnosis, treatment, alleviation or cure of cancer which has not been approved by the designated federal agency (21 U.S.C. § 355) or by the state board. [Citation.]" (*Privitera*, at p. 700.) The defendants were convicted of selling laetrile as a cure for cancer, and challenged the statute under the state and federal rights to privacy. (*Ibid*.)

Regarding the federal privacy right, the Supreme Court held: "The interest defendants allege is, apparently, 'the interest in independence in making certain kinds of important decisions.' [Citation.] But the kinds of 'important decisions' recognized by

9

the high court to date as falling within the right of privacy involve ' "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education" ' [citations], but do not include medical treatment." (*Privitera, supra*, 23 Cal.3d at p. 702.)

The defendants fared no better under the state privacy right. The Supreme Court found the primary purpose behind the privacy guarantee in the state constitution was " 'a more focused privacy concern, relating to the accelerating encroachment on personal freedom and security caused by increased surveillance and data collection activity in contemporary society. The new provision's primary purpose is to afford individuals some measure of protection against this most modern threat to personal privacy.' " (*Privitera, supra*, 23 Cal.3d at p. 709, quoting *White v. Davis* (1975) 13 Cal.3d 757, 774.) Our high court found that "[i]n the absence of any evidence that the voters in amending the California Constitution to create a right of privacy intended to protect conduct of the sort engaged in by defendants, we have no hesitation in holding that section 1707.1 does not offend that constitutional provision." (*Privitera*, at pp. 709-710.)

*Privitera* holds "that there is a presumption of constitutional validity and no trespass into the forbidden zone of privacy where health and health care legislation are involved. Thus, the state standard initially also requires a legitimate and reasonable state interest and means that bear a real and rational relation to the object sought to be obtained. [Citations.]" (*Wilson v. California Health Facilities Com., supra*, 110 Cal.App.3d at p. 324, fn. omitted.) Likewise, where "the challenged action primarily concerns health and safety, no fundamental right to privacy is at stake. [Citation.] Consequently, when the state asserts important interests in safeguarding health, review is under the rational basis standard. [Citation.]" (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 711-712.)

The same applies here. Where an ambulance takes a person in a medical emergency is a medical decision that does not implicate one's personal integrity or the

10

corresponding right to refuse medical treatment. The policy at issue here does not compel a person to be placed in an ambulance and forced to go to a hospital against that person's will, as a person may always refuse ambulance service and go to another hospital on his or her own accord. It is thus unlike surgery or another form of medical treatment without the patient's consent. (See *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 531.) This decision likewise does not implicate one of the important decisions which implicate the right to privacy.

Since 5050.13 does not implicate any constitutionally protected privacy interest, we analyze it under the rational basis standard. "The rational basis test asks whether the classification is rationally related to a legitimate governmental purpose. [Citation.]" (*Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 776.)

The policy readily satisfies this test. Time is particularly scarce in medical emergencies. A policy mandating that a person in a medical emergency be transported to the nearest appropriate medical facility reduces travel time for ambulances while getting patients most quickly to the appropriate place for treatment. This serves both the person being transported and those awaiting an ambulance, who might otherwise lose crucial time waiting for an ambulance to become available because it was transporting a patient to a more distant facility because it was that patient's place of choice. The SCEMSA policy thus withstands constitutional scrutiny.

Neither Probate Code section 4650 nor the Act's guarantee of emergency ambulance services can rescue appellants' claim.

Probate Code section 4650 provides:

"The Legislature finds the following:

"(a) In recognition of the dignity and privacy a person has a right to expect, the law recognizes that an adult has the fundamental right to control the decisions relating to

11

his or her own health care, including the decision to have life-sustaining treatment withheld or withdrawn.

"(b) Modern medical technology has made possible the artificial prolongation of human life beyond natural limits. In the interest of protecting individual autonomy, this prolongation of the process of dying for a person for whom continued health care does not improve the prognosis for recovery may violate patient dignity and cause unnecessary pain and suffering, while providing nothing medically necessary or beneficial to the person.

"(c) In the absence of controversy, a court is normally not the proper forum in which to make health care decisions, including decisions regarding life-sustaining treatment."

This codifies a right to refuse treatment, particularly in the end of life context, but it does not create a right to direct or compel a particular form of treatment. In the context of appellants' claim, it is no different than the state constitutional right to privacy. And like that right, it is not implicated by 5050.13.

While the Act guarantees emergency medical services (see § 1797.5 ["It is the intent of the Legislature to promote the development, accessibility, and provision of emergency medical services to the people of the State of California"]), a state guarantee of a particular right or benefit does not create a corresponding right by a beneficiary to dictate how the right or benefit is to be carried out. (See e.g., *Harris v. Superior Court* (1977) 19 Cal.3d 786, 795 [appointment of particular counsel for indigent defendant within trial court's discretion, defendant cannot compel the trial court to select counsel of defendant's choice]; *People v. Sapp* (2003) 31 Cal.4th 240, 256 [trial court can disregard defendant's preference in appointing counsel].) The Act vests considerable discretion in SCEMSA and its director to promulgate policies like 5050.13. Since appellants failed to identify a right to privacy that is implicated by this policy, they cannot attack it in the courts.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal, if any. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

_____\\s\\_____,
BLEASE, Acting P. J.

We concur:

_____\\s\\_____,
DUARTE, J.

_____\\s\\_____,
RENNER J.